Michigan Supreme Court
Lansing, Michigan

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 15, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                 No. 119500

WILLIAM COLE GRANT,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

This is a claim of ineffective assistance of counsel. Defendant was convicted by a jury on three counts of criminal sexual conduct involving two sisters. His convictions were based largely on testimony of the older girl who stated that defendant had severely injured her during an incident of sexual misconduct. Defendant maintained that he was innocent and that the injury this girl sustained was caused by a bicycle accident, as she had originally related.

Defendant's counsel failed to adequately interview members of the family who were present on the day of the

incident.  He did not determine if in fact the alleged bicycle accident had caused the older girl's injury.  On the basis of well-established law, we hold that counsel's failure to investigate and substantiate defendant's primary defense was not a strategic decision, erroneous only in hindsight.  It was a fundamental abdication of his duty to conduct a complete investigation, and it restricted his ability to make reasonable professional judgments and put forth his case.  As a consequence, defendant was deprived of a substantial defense and of the effective assistance of counsel.  We reverse the convictions and remand the case for a new trial.

I

The facts in this case were developed at trial and through several posttrial hearings before the trial court.[1] A detailed understanding of them and when they were presented is necessary to fully evaluate the appeal.  At the time of the alleged incident, defendant was living with his girlfriend at her parents' home.  The sisters are his girlfriend's nieces.  They alleged that defendant sexually

---

[1] Chief Justice Corrigan accuses us of "rel[ying] on factual inaccuracies."  *Post* at 1. Yet, she fails to identify any of them.  We believe that the record relied on here has been accurately stated.

2

abused them on two occasions.  The first time was at a birthday party for their grandfather, when the older of them was about eight years old.  She alleged that defendant forced her to have intercourse with him.  The second allegation was that defendant sexually touched both girls in a closet about a year later.

On the day of the first alleged incident, the older girl was severely injured.  She suffered a tear from the rear of her vaginal opening to her anus.  She told her family and her treating doctor that she had injured herself in a bicycle accident.  The examining doctor described the injury as a "clean" tear, consistent with a straddle injury, rather than a ragged tear consistent with abuse. This doctor prepared an initial report of his examination that included the older girl's statements.  He prepared a subsequent report that concluded that, alternatively, her injury could have been caused by sexual abuse.

After the second alleged incident, which occurred about a year later, the older girl told a friend that defendant had had intercourse with her.  The friend told her mother, who called child protective services.  In connection with the resulting investigation, the girls' father took them to a second doctor.  During the older girl's examination by this doctor, she said that defendant

had raped, then threatened her, demanding that she fabricate the bicycle accident to explain her injury. This doctor also prepared a report of her examination of the complainants, which she provided to the police officer who was investigating the alleged abuse.

The prosecutor proceeded to trial on the theory that the bicycle accident was a fabrication. The older girl testified that her injury was the result of sexual abuse by defendant. She testified that there had never been a bicycle accident at all. The prosecutor's evidence also included testimony by both examining doctors and the investigating officer. In closing argument, the prosecutor emphasized that defendant had presented no eyewitness testimony to support the occurrence of a bicycle accident.

Before trial, defense counsel had available to him at least three sources of information about the charges against defendant.[2] (1) He had a copy of the first doctor's first report, and knew about or had a copy of his second report. (2) He knew about and possibly had a copy of the second doctor's report. (3) He had a list given him by

---

[2] We rely on trial testimony to evaluate this case. We do not premise our analysis on an assumption about the contents of only one document, as Justice Weaver implies. *Post* at 2.

defendant of at least twelve people associated with the girls or defendant to interview for information or as witnesses.

Defense counsel's investigators interviewed only two or three of these people. None of them had seen the alleged bicycle accident. Counsel did not direct his investigators to inquire whether the people interviewed could name anyone who had seen it or knew more about it. Consequently, he failed to learn that there were eyewitnesses. Two of the sisters' cousins could have testified that, on the day of the alleged incident, they saw the older girl injure her genital region in a bicycle accident.

Defense counsel proceeded to trial on a three-pronged theory: (1) defendant did not commit the crimes, if they even occurred; (2) the injury to the older girl was the result of the bicycle accident; and (3) this girl habitually made up things. He argued that, despite the absence of eyewitness testimony, several witnesses said they had heard about the accident, not from the older girl, but from her brother. The jury convicted defendant as charged.

Defense counsel learned of the potential eyewitnesses at the time of sentencing. The girls' aunt approached

5

counsel and told him that her sons, their cousins, had witnessed the accident. Defense counsel's motion to reopen proofs, presumably to present newly discovered evidence, was denied.

Defendant then retained different counsel who sought a new trial on the basis of newly discovered evidence.[3] During a lengthy hearing in the trial court, the cousins testified that they witnessed the older girl injure herself in the bicycle accident. However, the trial court determined that the exculpatory evidence would have been merely cumulative.

On direct appeal, the Court of Appeals found that counsel could have discovered and produced the evidence at trial using reasonable diligence. Hence, defendant was not entitled to a new trial on the basis of newly discovered evidence. But, the Court did find that the evidence was

---

[3] For a new trial to be granted on the basis of newly discovered evidence, defendant had to show that

> (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) including the new evidence upon retrial would probably cause a different result; and (4) the party could not, using reasonable diligence, have discovered and produced the evidence at trial. [*People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996).]

material and not cumulative. It remanded the case for a *Ginther*[4] hearing regarding whether counsel had been ineffective for failing to discover or present the evidence. Unpublished opinion per curiam, issued May 16, 2000 (Docket No. 214941).

By the time the *Ginther* hearing was held before the trial court, the two cousins only vaguely recalled the incident. This is not surprising considering that the alleged accident had occurred more than five years earlier when they were about ten and six years old. The trial court ruled that the evidence was not sufficiently probative to support a determination that counsel was ineffective for failing to ascertain and introduce it. It appears that the trial court's decision was based on the fact that the witnesses were unable to remember the incident clearly at the time of the *Ginther* hearing.

Defendant again appealed. The Court of Appeals, apparently analyzing only the *Ginther* hearing testimony, agreed with the trial court that the evidence "would not have been of substantial benefit to the defense." Unpublished memorandum opinion of the Court of Appeals, issued May 1, 2001 (Docket No. 214941).

---

[4] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

Defendant sought leave to appeal in this Court, requesting a new trial on alternate theories: either the eyewitness testimony of the bicycle accident was newly discovered evidence, or defendant had been denied the effective assistance of counsel by counsel's failure to produce eyewitnesses at trial. At oral argument before this Court, defense counsel conceded that this evidence would have been discoverable with reasonable diligence and, therefore, was not "newly discovered." We consider only whether defendant was deprived of the effective assistance of counsel.

## II

Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel. *People v Riley,* 468 Mich 135, 139; 659 NW2d 611 (2003). We review a trial court's findings of fact for clear error. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002).[5] Questions of constitutional law are

---

[5] Although we must defer to the trial court's findings made at the hearing held pursuant to *People v Ginther* 390 (continued…)

8

reviewed de novo. *Tolksdorf v Griffith,* 464 Mich 1, 5; 626 NW2d 163 (2001).

III

In *People v Pickens,*[6] this Court adopted the ineffective assistance of counsel standard that the United States Supreme Court established in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Accordingly, to demonstrate ineffective assistance, a defendant must show that his attorney's performance fell below an objective standard of reasonableness. The defendant must overcome the presumption that the challenged action could have been sound trial strategy. *Id*. at 689, see also *People v Carrick*, 220 Mich App 17, 22; 558 NW2d 242 (1996). A reviewing court must not evaluate counsel's decisions with the benefit of hindsight. *Strickland, supra* at 689. On the other hand, the court must ensure that counsel's actions provided the defendant with the modicum of representation that is his constitutional right in a criminal prosecution.

_____

(continued…)
Mich 436; 212 NW2d 922 (1973), we do not afford blind deference when the trial court applies the wrong legal standard.

[6] 446 Mich 298; 521 NW2d 797 (1994).

9

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* supra at 690-691.

The defendant must show also that this performance so prejudiced him that he was deprived of a fair trial. *Pickens,* supra at 338. To establish prejudice, he must show a reasonable probability that the outcome would have been different but for counsel's errors. *Strickland, supra* at 694. A reasonable probability need not rise to the level of making it more likely than not that the outcome would have been different. *Id*. at 693. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id*. at 694.

A

In this case, counsel's performance was not objectively reasonable. Defendant was facing three counts of sexual misconduct. Two of them were founded wholly on the sisters' statements implicating defendant. The third

10

and most serious of them was founded on the older girl's statements and an underlying physical injury. The best refutation of all the charges would have been strong substantive evidence that the older girl's injury was caused by something or someone other than defendant. Had that charge been defeated, then the other two would have been greatly weakened, given the questionable credibility of the two girls as witnesses. The development of defense counsel's trial strategy had to consider these facts. His failure to conduct a more thorough investigation to uncover evidence to support an alternate causation theory was objectively unreasonable.

A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments. Counsel must make "an independent examination of the facts, circumstances, pleadings and laws involved . . . ." *Von Moltke v Gillies*, 332 US 708, 721; 68 S Ct 316; 92 L Ed 309 (1948). This includes pursuing "all leads relevant to the merits of the case." *Blackburn v Foltz,* 828 F2d 1177, 1183 (CA 6, 1987).

We evaluate defense counsel's performance from counsel's perspective at the time of the alleged error and in light of the circumstances. *Strickland, supra* at 689. Thus, counsel's words and actions before and at trial are

11

the most accurate evidence of what his strategies and theories were at trial.

At the *Ginther* hearing before the trial court on defendant's claim of ineffective assistance of counsel, defense counsel responded to questioning. He said that his theory had been that the older girl was in the habit of telling lies and could not be trusted. His "main thrust was that this girl was a liar" and he "welcomed" her testimony that she had lied about the bicycle accident. She had been, he theorized, either injured in a bicycle accident or by a sexual assault, but, regardless, was falsely accusing defendant.

Yet, counsel did not think it necessary to be prepared to prove the occurrence of the bicycle accident in order to substantiate his theory that it had caused the injury. He felt that additional witnesses would not be vital. He failed to contact most of the persons whose names defendant had provided for his own defense. He failed to inquire whether anyone in the family had seen and could testify about the fact of the alleged bicycle accident and its role in causing the injury. He failed to act on statements from the witnesses that he did interview that the girls' brother may have seen the accident.

Justice Weaver disagrees that defense counsel thought the occurrence of the accident was disputed because he testified at the *Ginther* hearing on his own effectiveness that "'The accident was not disputed.  The girl never disputed it.'"  *Post* at 2.  However, his subjective belief was unreasonable.

Counsel had readily available to him information that should have prompted further inquiries.  For example, defense counsel admitted at the *Ginther* hearing that the first doctor's initial report said that the injury was not caused by sexual abuse.[7]  When that doctor testified at trial, he stated that the older girl had told him "[t]hat she was riding a bicycle and slipped and had a straddle injury . . . ."  The girl told the second doctor that she had not been injured in a bicycle accident.  This doctor testified that the older girl said that

---

[7] In addition, defense counsel also contacted other doctors regarding possible causes of the older complainant's injury.  However, those doctors were unable to conclusively determine the cause of the injury.  Even if they had, they would not have been able to testify at trial because they had not examined the girl.  Thus, because no doctor definitively determined the cause of the injury independent of the girl's statements, counsel needed a witness who saw the girl injure herself in a bicycle accident.  Chief Justice Corrigan's distinction between counsel's failure to find "a" witness versus "any" witness is meaningless.  *Post* at 13.  "A" and "any" are synonyms. *Random House Webster's College Dictionary* (1995).

13

she had been told by this person who abused her not to tell anyone because . . . he would hurt her and he threatened her . . . and so she told [the first doctor] that this was a bike accident and this was the story she was told to give him by this abuser.

It is reasonable to infer that the doctors' testimony was based on their patient histories and the reports they had prepared. That evidence shows that the girl had made conflicting statements about the cause of her injury.

The officer investigating the alleged abuse had "asked that a letter be dictated" of the results of the examination, which the doctor did. On cross-examination of this witness, defense counsel referred to a notation he had made in his copy of this doctor's report, indicating that he had seen it before trial. Hence, defense counsel had seen both reports before trial.

This testimony clearly demonstrates[8] that the two doctors' reports showed conflicting causes of the injury and conflicting statements by the older girl. Hence, defense counsel knew or should have known before trial that the cause of the injury was in question.

Chief Justice Corrigan, *post* at 12 n 2, and Justice Weaver, *post* at 2, criticize the majority for relying on

---

[8] We do not "speculat[e]" about the contents of these reports, as Justice Corrigan argues *post* at 12 n 2.

14

the second doctor's report.  We find that it was unreasonable for defense counsel to rely on the older girl's anticipated testimony at trial to refute the allegation that defendant had caused her physical injury. It would have been unreasonable even if the second doctor's report had not indicated that the girl was changing her story and even if defense counsel had lacked the report.  A central element of his defense was that the girl had falsely accused defendant.  It was not reasonable for counsel to rely on part of her testimony to establish an important fact while hoping to show her a liar as to the rest.

Also contrary to Chief Justice Corrigan's assertions, *post* at 14, defense counsel acknowledged that it was important to establish that the bicycle accident occurred. He came to this realization in the course of the *Ginther* hearing.  Defense counsel was asked:

> *Q.*  Would it have been important for the jury to hear testimony, in your opinion, on behalf of Mr. Grant, that they observed vaginal bleeding from this bicycle accident or . . .
>
> *A.*  Yeah.  If . . .
>
> *Q.*  . . . bleeding in that area?
>
> *A.*  Right.  But your question was about witnesses to the accident.  You're, you're not asking about witnesses to the bleeding.  So the

answer to the witnesses, the accident, no, that was not important.

Later in the hearing, defense counsel was asked:

*Q.* Counsel? The issue, as you say, was not the accident. The issue was the cause of the bleeding.

*A.* Correct.

*Q.* If you had an eyewitness who was able to not only say, "I saw the accident," which you say is elementary because it's, it's irrelevant. But he can say, "I saw the accident," and, and "I saw the cause of the bleeding" that occurred from the bicycle accident. Would that type of eyewitness have been important to the defense? That the injury was sustained by the accident and not by criminal sexual conduct?

*A.* A, a, a civilian eyewitness can say that that's what caused the bleeding? I don't think any such thing existed.

*Q.* Well, let me ask you, sir, if you put a witness on the stand and that witness says, "I saw the little girl riding her bicycle." "And I saw her get into an accident and I saw her bleeding afterwards." Would that have been relevant to this defense?

*A.* If such a witness existed, I guess so, yeah.[9]

Despite his later characterization of his decision-

making as "informed," we cannot conclude that counsel's

---

[9] We disagree with Chief Justice Corrigan's statement that the eyewitnesses' testimony could have "undermined" defendant's defense. *Post* at 2. We cannot imagine in what sense testimony proving that the girl was lying when she said that defendant caused her injuries could have done anything other than benefit defendant.

16

failure to investigate the alleged bicycle accident was in pursuit of a trial strategy, erroneous only in hindsight. *People v Johnson,* 451 Mich 115, 122-123; 545 NW2d 637 (1996).

Because counsel failed to prepare himself, he failed to appreciate his client's predicament: without direct evidence of the accident that caused the older sister's injury, his defense was merely a credibility contest between a little girl and an accused rapist. Witnesses who saw the older sister descend a hill on a bicycle, fall, and return with blood-soaked pants could have provided substantive evidence that abuse did not cause her injury.[10]

---

[10] Chief Justice Corrigan, *post* at 19-27, suggests that the eyewitnesses' testimony would not have been of much assistance to defendant because their testimonies at the *Ginther* hearing were inconsistent. The boys had difficulty remembering whether the older girl was wearing blue jeans or sweat pants at the time of the accident, which had occurred several years earlier. This does not foreclose the conclusion that there is a reasonable probability that the outcome would have been different if they had testified. This testimony would have been the only substantive evidence presented at trial of the occurrence of the accident. As explained beginning at p 21, the failure to present it prejudiced defendant.

Moreover, the trial court determined this evidence would not have been of assistance to defendant because it was merely cumulative as well as because it was inconsistent. As the Court of Appeals recognized, there is a reasonable probability that the outcome would have been different with the testimony. P 24. Some internal
(continued…)

17

The only evidence that the prosecutor presented to prove these three counts was the testimony and statements of the two girls and the fact of the older girl's physical injury.

Counsel's lack of forethought is critical considering that, as he himself opined, in cases like this, the defendant practically has to be proven innocent to be acquitted. Given these circumstances, a defense founded solely on credibility was sorely vulnerable to defeat.

We also note that this is not an instance in which counsel failed to discover facts after a reasonable inquiry that would have caused an effective attorney to inquire further. As stated,[11] at no time did counsel direct his investigators to ask whether anyone had seen the bicycle accident. Cf. *Wiggins v Smith,* 539 US 510; 123 S Ct 2527; 156 L Ed 2d 471 (2003)(failure to investigate). His failure to conduct an investigation to determine if known witnesses had direct evidence to substantiate his defense was objectively unreasonable. See *Frazier v Huffman*, 343 F3d 780, 795 (CA 6, 2003). It is even more so where his witnesses testified that they had heard about the accident

———————————

(continued…)
inconsistencies are expected when children recall an incident long past.

[11] See p 5.

from the girls' brother.  He should have recognized that his witnesses could not give substantive evidence of the accident based on another's out-of-court statements.  MRE 802.

Moreover, this is not a case of counsel disregarding one possible, alternate theory of defense in favor of a better one, after finding the first "contradictory, confusing, incredible, or simply poor." *Pickens, supra* at 325.  As stated above, counsel's theory was that the girl was a liar and had falsely accused defendant.  This was a sound defense strategy.[12]  Had it been fortified by adequate investigation, it would have shown the weakness in the prosecutor's case, and it could have made a difference in the verdict.  See my discussion beginning at p 21.

This case differs from one in which there has been a failure to call witnesses whose potential testimony defense counsel already knows.  Cf. *People v Johnson*, 451 Mich 115; 545 NW2d 637 (1996); *People v Carbin*, 463 Mich 590; 623 NW2d 884 (2001).  Here, counsel did not interview half of the people whom defendant identified as potentially having

---

[12] Thus, we do acknowledge the merit in defense counsel's trial strategy, contrary to the assertions of Chief Justice Corrigan, *post* at 17.  However, we also recognize its fatal shortcomings.

19

helpful information.[13]  He did not know what testimony these witnesses would give.  He did not know where they had been or what they had seen.

The fact that defense counsel obtained no substantive evidence of the cause of the older sister's injury shows that his investigation was incomplete.  He relied on the girl's own, already recanted explanation.  His decision not to call as witnesses the individuals identified by defendant was not based on objectively "reasonable professional judgments."  Consequently, his trial strategy was unreasonable under these circumstances.

B

The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome.  *Carbin* at 590.  Counsel's failure to investigate his primary defense prejudiced defendant.  It adversely affected the outcome, depriving defendant of a fair trial.  In light of the evidence presented at trial, there is a reasonable probability that the outcome would have been different.

---

[13] Chief Justice Corrigan forgives defense counsel's failure because some witnesses were uncooperative.  *Post* at 10-11.  However, counsel did not even attempt to contact many of the known witnesses.

20

It was critical to defendant's theory to show that the older sister had been injured in a bicycle accident. At trial, counsel tried belatedly to establish in the jury's mind the idea that the bicycle accident was real rather than a mere story told by a frightened girl. But, the jury heard no direct evidence that the girl's injury could have been occasioned by a bicycle accident. Most of the evidence defense counsel attempted to elicit to substantiate the occurrence of the accident was inadmissible as hearsay. The evidence that defense counsel did present concerned the girl's bleeding, serving only to underscore the severity of her injuries. Later, the prosecutor's closing argument emphasized the defense's lack of evidence.

On appeal from the trial court's denial of defendant's motion for a new trial, the Court of Appeals correctly held that the cousins' testimony was not cumulative. It was the best evidence available in support of defendant's theory. Eyewitness descriptions of the accident would have given independent support to defendant's theory that the injury was caused by a bicycle accident, not by sexual misconduct.

As the Court of Appeals explained, the girls' cousins' testimony "could have transformed a defense theory without any substantiation to a theory supported by observation of

eyewitnesses." Unpublished opinion per curiam, issued May 16, 2000 (Docket No. 214941), p 2. Hence, it was more probative than the older girl's own earlier statements or the statements of the other witnesses presented at trial, which were admissible only for impeachment. As the Court of Appeals recognized, "[t]his testimony was not corroborative; it would have materially changed the quality, as opposed to the quantity, of the evidence supporting defendant's theory." *Id.*

Had the jury heard the cousins' testimony about the alleged accident, the nature of the defense would have changed from an unsubstantiated argument to the jury. It would have become a direct attack on the factual basis of the prosecution's primary charge grounded in credible testimony.

The testimony of the two eyewitnesses would have demonstrated that the older girl's physical injury was the result of a bicycle accident, not sexual abuse. It would have greatly undermined the older girl's credibility and strongly suggested that she was fabricating horrific stories about defendant.

Had the eyewitnesses testified, the prosecutor's only remaining evidence of these three counts would have been

22

the testimony of the younger girl.[14]   After hearing the older sister's other claims, which were fanciful,[15] the jury reasonably would have disbelieved the younger sister's allegations.  She might not have testified.[16]

The trial court considered the hearsay evidence that was presented at trial about the accident and concluded that additional evidence of the same nature would have been merely cumulative.  It failed to consider the trial evidence in favor of defendant when it determined whether there is a reasonable probability that the outcome would have been different.  *Strickland* at 694.

For instance, the older girl "was not crying" when she was examined by the first doctor and she was not "afraid." She was "less nervous than most kids that age" and was not

---

[14] Chief Justice Corrigan cites the testimony of the prosecution's other witnesses to assert that there was a mountain of evidence against defendant.  *Post* at 3-7. However, all their testimony about the cause of the injury derived from the older girl's statements.  Once her accusation was undermined with evidence that an accident injured her, the prosecutor's case would have been substantially weakened.

[15] The older girl said that the sexual attack "felt weird" rather than painful.  She also said that the first doctor took her baby out.

[16] These paragraphs *analyze* the effect of this fact on defense counsel's decisions.  They do not "ignore" it, as Chief Justice Corrigan claims.  *Post* at 2.

"particularly under stress or nervous."  The doctor was later asked:

> Q.  And the observations that you made were consistent with [the older girl's] report of an accident from a fall on a bicycle.  Isn't that correct?
>
> A.  Correct.

The doctor concluded, on the basis of the girl's calm emotional state and the physical characteristics of the injury, that sexual abuse was not involved.

The younger girl testified that she and her sister voluntarily "sat on [defendant's] lap" after one of the alleged CSC-II incidents.  They also failed to tell their father or uncle what had allegedly just occurred, although they were there with defendant and the girls.  Defendant's girlfriend testified that he had "never done anything" to the girls.  The older girl was "always hanging around with [defendant] and sitting on his lap" and never acted afraid of him.  The girls' grandfather also testified that the attitude of the girls towards defendant never changed.

At the *Ginther* hearing, the trial court failed to recognize that the question was not whether the cousins' testimony was probative.  The question was not, as Chief Justice Corrigan implies in her dissent, *post* at 4-5, whether the evidence was sufficient to allow a reasonable

24

juror to find guilt "beyond a reasonable doubt." *People v Gonzalez*, 468 Mich 636, 640; 614 NW2d 78 (2003). If that standard obtained at a *Ginther* hearing, an ineffective assistance of counsel claim would fail in almost every instance. The question was whether there was a reasonable probability that the outcome of the trial would have been different had defense counsel adequately investigated the facts before developing his strategy.

After the *Ginther* hearing, when denying defendant's motion for a new trial, the trial court improperly relied on counsel's expertise and performance in past cases to evaluate his performance in this case. It noted that defendant's counsel was experienced in criminal defense work. The dissent succumbs to the same mistake. It is irrelevant that counsel "expended *twice* his normal resources on this case . . . ." *Post* at 10. When defense counsel agreed to represent defendant, he committed himself to conducting an adequate investigation of the case. The resources he devoted to other cases are irrelevant to assessing the performance of his duties in this case.

If the eyewitnesses had testified, the older sister's testimony that she was injured by sexual abuse would have been refuted. This would have seriously impeached her testimony regarding the other incidents of abuse that

25

allegedly occurred more than a year later. It would have corroborated the testimony that defendant had a positive relationship with the girls.

Considering the evidence admitted for and against defendant, there is a reasonable probability that defendant would not have been convicted as charged. The trial court failed to appreciate that counsel's failure to investigate and substantiate the defendant's primary defense was a fundamental abdication of counsel's duty to conduct a complete investigation. It deprived his client of a substantial defense. Consequently, we find that defendant was deprived of the effective assistance of counsel. Because his convictions are not founded on a fair trial, they cannot stand.[17]

IV

In conclusion, defense counsel failed to investigate and substantiate defendant's primary defense. There is a reasonable probability that the result of this trial would have been different had the evidence in question been

---

[17] We concede that an unfavorable result is not enough to demonstrate ineffective assistance of counsel. However, an unfavorable result may be enough where a defendant can demonstrate a reasonable probability that a more favorable result would have been reached.

26

presented. This failure was not a strategic decision, erroneous only in hindsight.

We hold that counsel's failure to conduct a complete investigation was a fundamental abdication of duty that prejudiced defendant, depriving him of a fair trial. Accordingly, the convictions are reversed and the case remanded for a new trial because of the ineffective assistance of defendant's counsel.

Marilyn Kelly
Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 119500

WILLIAM COLE GRANT,

    Defendant-Appellant.

_____

TAYLOR, J. (*concurring*).

I concur in the result of Justice Kelly's opinion. I reach this conclusion not, as the dissents suggest, on the basis of hindsight, but on the fact that defense counsel was faced with a first-degree criminal sexual conduct (CSC I) charge in which it was not simply a "who do you believe" contest between an injured girl and the defendant where she says it happened and he says it did not. Rather, it was a "who do you believe" contest *plus* the prosecution had the additional evidence of a savage vaginal injury that surely would make a lot of people think that criminal sexual conduct happened unless there was another explanation for the injury.

While it is not ineffective to say the injured girl is a liar and always had been (especially given the other two

charges), that defense will only cover the usual case that turns on credibility and for which there is no physical evidence. Where there is such incriminating evidence and the injured girl is now asserting that defendant, and not a bicycle accident, caused her injury, an investigation to find witnesses to the bicycle accident is required. To fail to do so is not a reasonable, professional judgment. *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Clifford W. Taylor
Stephen J. Markman

**STATE OF MICHIGAN**

**SUPREME COURT**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

No. 119500

WILLIAM COLE GRANT,

    Defendant-Appellant.

_____

CORRIGAN, C.J. (*dissenting*).

Although this fact-specific case has no majority opinion and therefore lacks any jurisprudential significance, I cannot join in the opinion of Justice KELLY or Justice TAYLOR because their analyses depart from settled principles regarding ineffective assistance of counsel. Therefore, I respectfully dissent. The opinions of Justice KELLY and Justice TAYLOR conclude that defense counsel is constitutionally ineffective if counsel's chosen strategy does not produce a favorable outcome for the defendant. Justice KELLY's opinion relies on factual inaccuracies, omissions, and speculation and fails to observe case law from both this Court and the United States Supreme Court. Applying that law to the facts, I conclude that defendant has not overcome the strong presumption that defense

counsel's decision to not interview certain witnesses was strategic. Rather, the evidence shows that defense counsel chose not to interview the contested witnesses because their testimony was not necessary to his chosen trial strategy and could, in fact, have undermined it. Accordingly, I would affirm the decision of the Court of Appeals.

### I. FACTUAL HISTORY AND PROCEDURAL POSTURE

A detailed understanding of the trial is necessary to fully evaluate whether defense counsel was ineffective.

Defendant was charged with one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a), and two counts of second-degree criminal sexual conduct for conduct involving his girlfriend's nieces. Justice KELLY appears to ignore this crucial fact in her opinion: defendant was facing *three* counts of criminal sexual conduct, not only the one count involving the severe injury to the older sister. All the evidence presented and decisions made by defense counsel must therefore be evaluated in light of the three counts.

The prosecution proved that defendant had sexually penetrated the older sister, causing a severe injury to her

2

vaginal wall,[1] and that defendant had also touched both sisters on a later occasion. Regarding the charge of first-degree criminal sexual conduct, the older sister testified that she originally told everyone, including the emergency room doctor who treated her, that she had been injured in a bicycle accident. She admitted that she had lied about the bicycle accident. Instead, defendant had injured her when he penetrated her. She stated that defendant told her to say she was injured in a bicycle accident.

The sisters' father's testimony regarding the first-degree criminal sexual conduct charge was particularly noteworthy. The father was present at the home when the older sister appeared with her injuries. He testified that, before anyone knew the extent or cause of the older sister's injuries, defendant spontaneously insisted he had not hurt her:

> *Q.* Okay, and when you got ready to leave for the hospital, you—you and [the defendant's girlfriend, who was the sisters' aunt] took [the older sister]. Is that right?
>
> *A.* Well that young man over there come over there crying to [defendant's girlfriend] saying I

---

[1] The older sister underwent surgery under general anesthesia that required twenty stitches to repair an episiotomy-like rip.

didn't do this, I didn't do that, and they know right off the bat that I was going to take care of it my own way.

The sisters' father further testified:

Then when we came back—when I came back [defendant] goes—he goes running to [his girlfriend] saying that he didn't—[the older sister's father's] going to think the wrong [sic, thing] about me.  What do you expect I'm going to think?  If something's happened to [the older sister], I'm going to think it unless I know what happened.  Then he goes crying over there to [his girlfriend] and [his girlfriend] comes over and says I got something to tell you.  Bill [defendant] didn't touch. . .Bill didn't touch [the older sister].  Then I had [the older sister] to psy—psychology and—

Q.  What are talk—

A.  We're talking about the bike accident. You brought up the subject so I'm just telling ya'.

Regarding the charges of second-degree criminal sexual conduct, both sisters testified that defendant had touched them inappropriately in a bedroom in their father's apartment.  Their testimony was corroborated by their father, who testified that defendant went alone to the part of the apartment where the girls were playing and was gone from the kitchen for about five to ten minutes.

In her opinion, Justice KELLY repeatedly insists that the "only evidence" of the three counts of criminal sexual conduct was the sisters' statements and testimony.  This is patently false.  The prosecution presented no fewer than

4

*eight* witnesses during the two-day trial, including two physicians, the sisters, a friend of the older sister (who corroborated the older sister's testimony), the mother of the older sister's friend (who also corroborated the older sister's testimony), the sisters' father (whose testimony was outlined above), and the officer who initially investigated the complaints. When discussing the evidence presented at trial, the prosecution should be afforded every supportive inference that can be drawn from this evidence. Justice KELLY, however, simply denies that evidence existed at all. This selective recitation of the facts is misleading.

The defense theory at trial was twofold: (1) that defendant did not commit the offenses and had no knowledge of them, and (2) that the older sister habitually lied and could not be trusted. The defense presented three witnesses.

The first was the sisters' grandfather and defendant's girlfriend's father. He lived at the house where the first-degree criminal sexual conduct occurred. He testified that defendant was never alone with the older sister and that the bicycle in question was like a unicycle, with the front broken off. He testified that he saw the older sister playing with the bicycle on previous

5

occasions, although he was not home at the time of the accident. The older sister's brother, however, told him about the bicycle accident. The grandfather testified that the older sister had never told him about any sexual abuse and that she never acted as though she was afraid of defendant or did not like him.

The second defense witness was the older sister's uncle and defendant's girlfriend's brother. He also testified that defendant was never alone in the house and that, to his knowledge, defendant never watched the older sister alone. Moreover, the older sister never acted frightened or uncomfortable around defendant and she never mentioned any abuse or inappropriate behavior to him. Although he had not seen the bicycle accident, the older sister's brother also told him about it. He saw the older sister after she was injured and knew she was being transported to the hospital. He also saw defendant after the older sister went to the hospital and did not remember defendant having any blood on his shirt.

The last witness was the older sister's aunt and defendant's girlfriend at the time of the offense. She and defendant had a child together, for whom defendant paid child support. She testified that defendant was never alone in the house and that it was "absolutely impossible"

for defendant to have ever been alone with the older sister. Further, although she had not witnessed the bicycle accident, she did accompany the older sister to the hospital. The older sister's brother also told her about the bicycle accident. Further, defendant's clothes had not been disturbed and she did not see blood on any of his clothing. Finally, she testified that the older sister had never come to her about any abuse or inappropriate behavior and that the girl liked defendant and always wanted to be around him.

In his closing statement, defense counsel argued that defendant did not commit the offenses and that the older sister, for whatever reasons, had lied. He pointed out numerous inconsistencies in the girl's testimony, including her insistence that she had been eight months pregnant and had the baby taken out of her at the hospital. Finally, defense counsel also made strategic use of the fact that none of the defense witnesses had witnessed the bicycle accident. He noted that the witnesses had all heard about the accident from the older sister's brother, rather than from the older sister herself. The jury convicted defendant on all counts.

II.   DISCUSSION

A.   THE LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

I agree with Justice KELLY that in *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994), this Court adopted the standard of ineffective assistance of counsel set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  To prove ineffective assistance, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  "Reasonable probability" is defined as "a probability sufficient to *undermine confidence* in the outcome."  *Strickland*, *supra* at 694 (emphasis added).

Unfortunately, Justice KELLY gives only lip service to the strong presumption that counsel's actions were sound trial strategy, and that "every effort [must] be made to eliminate the distorting effects of hindsight . . . ."  *Id.* at 689.  See also *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000), ("[A] defendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances.");  *People v Hoag*; 460 Mich 1, 6; 594 NW2d 57 (1999) (the law affords a strong presumption that counsel's actions constituted trial

8

strategy).  In evaluating a claim of ineffective assistance, "[j]udicial scrutiny of counsel's performance must be *highly deferential*" and should refrain from second-guessing counsel's chosen trial strategy.  *Strickland*, *supra* at 689 (emphasis added).  Counsel's performance must be evaluated from *counsel's perspective at the time of the alleged error* and in light of the circumstances.  *Id.*  This deferential standard of review exists because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.*

### B.  INVESTIGATION AND STRATEGY

Rather than apply this deferential standard of review, Justice KELLY has twisted the law to place the burden on the defense counsel to defend his chosen strategy.  In fact, Justice KELLY goes further and holds that, because defense counsel's strategy was not ultimately successful, it cannot even be considered reasonable.  *Ante* at 11.  In so holding, Justice KELLY completely ignores counsel's testimony in the hearing held pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).  Justice KELLY concludes that "[counsel here was not] disregarding one possible, alternate theory of defense in favor of a better one

9

. . . ." *Ante* at 19. This conclusion is not supported by the record evidence.

Defendant's trial counsel, David I. Goldstein, testified at the *Ginther* hearing. Goldstein expended *twice* his normal resources on this case: although he customarily used only one investigator for each case, he assigned two investigators to defendant's case because the witnesses were so uncooperative. Justice KELLY's assertions that counsel had information "readily available" to him and "failed to contact most of the persons whose names defense had provided for his own defense," *ante* at 12, are misleading and unfounded. Goldstein testified at length regarding his difficulty in finding any defense witnesses who would cooperate. In fact, as stated below, Goldstein provided documentary evidence of his repeated attempts to contact potential defense witnesses and the many ways those attempts were rebuffed or ignored. He stated that the investigators finally interviewed the older sister's grandfather, uncle, and defendant's girlfriend, but only after considerable effort. The witnesses, particularly defendant's girlfriend, would not return calls or keep scheduled appointments. He offered physical exhibits, including interviews notes and office records, to support this testimony. The defense witnesses defense counsel was

able to contact even ignored a trial subpoena, forcing him to obtain a material witness warrant to ensure their presence at trial. Defense counsel could not force the possible defense witnesses to cooperate; he was limited by the witnesses' marked refusal to cooperate.

The defense theory was that defendant did not commit the crime. At the time of the trial, Goldstein did not believe that establishing the accident was going to be a problem because the older sister had acknowledged the bicycle accident. Until the trial began, Goldstein was not aware that the older sister was denying the bicycle accident:

> *A.* I didn't think we needed to prove that the accident occurred because I didn't think the occurrence of the accident was in dispute.
>
> *Q.* Did you, did, the nature of the injury was in dispute, however? Wasn't it?
>
> *A.* The nature of the injury, but not the accident itself.[2]

---

[2] Justice KELLY relies on a police report to prove that Goldstein knew that the older sister had made inconsistent statements regarding the nature of her injuries. This police report is not in the record before us. Justice KELLY's assertions regarding this missing report are baffling. Justice KELLY also repeatedly insists that defense counsel's access to two doctor's reports should have prompted further inquiry. These reports are also not in the record before us. If the missing police report and the other missing reports identified by Justice WEAVER are so crucial to Justice KELLY's determination of this case, the
(continued…)

11

Goldstein testified that he did not consider it important to the defense to obtain eyewitnesses to the accident because of the older sister's admission and because "a layperson observing an accident can't testify as to the extent of injuries." He stated that he already had witnesses to testify about the amount of blood:

> [P]roving the existence of the . . . accident was not significant. We had [the uncle]. We had the, we had the statement of the girl. [The uncle] saw the blood. Nobody was disputing the bleeding. So proving that was not . . . a critical issue. The critical issue was relating that to the, to the charge. . . .
>
> And a . . . lay witness can't do that.

Goldstein explained that, given the anticipated testimony of Dr. Bond of a credible report of sexual abuse, he did not feel it was necessary to interview or call eyewitnesses to the bicycle accident:

> If the doctors are going to testify that the bicycle accident did not cause that injury, what's the point of proving that there was an accident?

He explained that he made the tactical decision to not contest the medical experts because he could not find any

---

(continued…)
proper course is not to "infer" the contents of the missing reports, but to remand to the trial court to reconstruct those reports. Justice KELLY refuses to remand to reconstruct these reports; instead, she simply bases her analysis on nothing more than mere speculation.

medical experts who would testify for the defense without having examined the older sister at the time of the injury. Justice KELLY implies, *ante* at 13 n 7, that the fact that defense counsel was unable to find any doctors to testify should somehow have prompted some further inquiry regarding the cause of the older sister's injuries. This mischaracterizes Goldstein's testimony at the *Ginther* hearing. Goldstein did not testify that he could not find a doctor who could conclusively determine the cause of the older sister's injuries; rather, he testified that he could not find *any* doctor who could form *any* opinion because the doctors had not had an opportunity to personally examine the older sister. I fail to understand how the fact that no doctor would testify without personally examining the older sister should have prompted further inquiry in the cause of the accident on the part of defense counsel. Rather, because he could not find any medical experts to testify, Goldstein was unable to choose any trial strategy that involved contradicting the prosecution's medical experts.

Further, Goldstein testified that one of the defense strategies was to argue that the older sister "had a habit of making things up." Thus, when the prosecutor opened

with the statement that the older sister was now denying there was an accident, he felt it strengthened the defense:

> But you know, . . . since our position was the girl was a liar, I welcomed [the prosecutor] getting up and saying that the girl had lied.

He testified:

> *A.* Our, the tactical decision was made that our main thrust was that this girl was a liar. That if she was, if she was in fact sexually assaulted it wasn't by Bill Grant.
>
> *Q.* And would have trying to attack the conclusions of the doctor or fight about a bicycle accident, would that have detracted from the defense that the victim was a liar?
>
> *A.* It could of, it could have. I mean obviously I can't read a jury's mind. But it could have.
>
> *Q.* But in your mind, it would have been a tactical decision to pick one defense and keep hitting that rather than a shotgun?
>
> *A.* Well, our defense all along was, we don't know if she was sexually assaulted or not. But if she was, it wasn't Bill Grant. You know, that we, that we didn't know whether she was or she wasn't because she had, she had a tendency to lie. But in any case, it wasn't Bill Grant.

Thus, he specifically considered the effect of the older sister's contradictory testimony and chose, *as a matter of strategy*, to highlight the inconsistencies and use it to the defense's advantage.

Goldstein also testified that he knew of the existence of the mother of the boys who allegedly witnessed the

14

bicycle accident before trial and knew that she had witnessed the older sister's injury. He stated, however, that he was not aware that the boys claimed they had witnessed a bicycle accident until he received a letter from their mother after the trial. He explained that he did not interview or call the boys' mother because, as far as he understood it, her testimony was that she saw the bleeding, and he already had two witnesses who testified they saw the bleeding. Further, Goldstein stressed that because the defense theory was that even if the older sister had been sexually assaulted, it was not by defendant, so establishing the existence of a bicycle accident was not crucial.

In short, defense counsel explained that: (1) he strategically chose to focus on two themes—that whatever had happened to the older sister, defendant was not involved, and that the older sister was a liar; (2) he made the further strategic decision not to pursue a theory that would have required presenting evidence regarding the existence of the bicycle accident, on the grounds that the conflicting stories strengthened the theory that the older sister was a liar and could possibly distract the jury from his chosen trial strategy; and (3) he chose to not interview the contested witnesses because their testimony

was either irrelevant to his defense (whether the bicycle accident had actually happened) or cumulative (the extent of the older sister's injuries). Defense counsel further testified that he chose his defense strategy after considering that he could not present any medical testimony to rebut the prosecution's medical testimony that the older sister's injuries were consistent with sexual assault.

It is clear that defense counsel did not interview the contested witnesses because, at the time he was preparing for trial, he had no reason to think those witnesses would enhance his chosen trial strategies. Further, it is clear that defense counsel did not interview the witnesses during the trial because he believed that the older sister's testimony that she had lied about the bicycle accident only strengthened his defense.

Justice KELLY's failure to acknowledge such trial strategy is puzzling. Justice KELLY also fails to acknowledge or apply the deferential standard required by *Strickland*. Rather than shunning hindsight and reviewing counsel's actions from counsel's perspective at the time of the alleged error in light of all the circumstances, Justice KELLY summarily concludes that defense counsel was ineffective because his strategy did not prove successful. This holding cannot be squared with our Sixth Amendment

16

jurisprudence. "[T]he Sixth Amendment guarantees a range of reasonably competent advice and a reliable result. It does not guarantee infallible counsel." *People v Mitchell*, 454 Mich 145, 171; 560 NW2d 600 (1997).

Further, Justice KELLY gives only lip service to the fact that defense counsel was not preparing for a trial in which the sole count was the first-degree criminal sexual conduct charge. Rather, defense counsel had to prepare a defense that addressed *all three charges* against defendant. He was repeatedly frustrated in his investigatory efforts by lack of cooperation from the ostensible witnesses. He did not have the benefit of perfect hindsight, nor did he have unlimited time and resources. Rather, he had to make his own "reasonable professional judgments" regarding "the limitations on investigation," including the "reasonable decision that makes particular investigations unnecessary." *Strickland*, *supra* at 690-691.

C.  REASONABLE PROBABILITY

In addition to ignoring the deferential standard of judicial review of trial strategy involving the multiple charges against defendant, Justice KELLY also ignores the definition of "reasonable probability." "Reasonable probability" does not mean that a majority of this Court finds the testimony of the contested witnesses compelling.

17

Rather, as explained above, "reasonable probability" means a probability sufficient to *undermine confidence* in the outcome.[3] Defendant has simply presented what could have been an alternate trial strategy; he has not met his burden of demonstrating a sufficient probability that the actual strategy chosen by his counsel actually undermined confidence in the outcome of his trial.

Further, any determination of "reasonable probability" must take into account the entire record, including all the evidence produced regarding the three counts against defendant. Given the sisters' father's devastating testimony that defendant spontaneously protested his innocence before anyone knew the extent or cause of the older sister's injuries, and given the corroborated testimony of both sisters regarding the second-degree criminal sexual conduct charges, one cannot conclude that defense counsel's decision not to pursue the bicycle accident issue with exhausting detail *undermines confidence* in the outcome.

After reviewing the full record, I cannot conclude that defense counsel's actions constituted anything less

---

[3] Justice KELLY attempts to recharacterize this standard as "beyond a reasonable doubt." Nowhere do I argue, however, that the standard is "beyond a reasonable doubt."

than sound trial strategy. Applying the correct standards of review and placing the burden on defendant reveals that defendant has not demonstrated that defense counsel committed any error at all, let alone an error that would undermine confidence in the outcome.

### III. RETRIAL

I also note that, if there is a retrial, the evidence regarding the bicycle accident that Justice KELLY finds so compelling will be subject to intense scrutiny, given the lack of any coherent testimony regarding the alleged bicycle accident.

In the characterizations of the testimony regarding the alleged bicycle accident, Justice KELLY willfully omits the many inconsistencies that arose during the testimony. A full review of the testimony, as outlined below, demonstrates that the testimony was conflicting, confusing, and actually undermined the testimony of the defense witnesses at trial. Had defense counsel presented such testimony at trial, the jury would have been presented with five defense witnesses, two of whom contradicted the testimony of the other three. I fail to see how the decision to present a coherent, unified defense theory to the jury constitutes ineffective assistance.

## A. The Initial Testimony Regarding the Bicycle Accident

After the verdict was rendered, but before sentencing, new defense counsel moved for a new trial on the basis of newly discovered evidence. The new evidence presented at the motion relevant to this appeal was that the sisters' cousins witnessed the bicycle accident that defendant had alleged caused the older sister's injuries. The cousins' testimony, however, was confusing and contradictory.

At the time of the first-degree sexual criminal conduct offense, the boys were six and eight. Their mother testified that she had not witnessed the bicycle accident, but that her children had. She testified that she was in the bathroom with defendant's girlfriend helping the older sister after she was injured and acknowledged that defendant's girlfriend would have known of her presence and made the same observations. The cousins' mother also stated that the rest of the family knew she was at the house on the day of the accident and also knew that her children were there. She testified that she was aware of the trial and stated that she told defendant's mother about her presence in the bathroom and her children's presence at the accident on the second day of the trial.

The older cousin testified that he saw the older sister's bicycle accident and saw her get injured. He

20

testified that, after the accident, the older sister did not cry or scream and walked by herself up to the house, where defendant's girlfriend took her into the bathroom. He testified that the older sister was wearing light blue jeans, but that the jeans turned dark after the accident because of all the blood. He testified that the older sister got hurt on the bicycle handles. He specified that he was at the bottom of the hill when the older sister got hurt and that no one was at the top of the hill. He testified that defendant's girlfriend would have known that he was at the house and that he was also playing with the bicycle when the accident occurred. He also stated repeatedly that he never told his mother or anyone else about the accident and insisted that if his mother said otherwise, she would be wrong.

The younger cousin testified that he knew he was at the hearing to testify about the bicycle accident, although he insisted no one told him that. He stated that the front wheel on the bicycle was broken off, but that the handlebars were intact. He testified that he saw the older sister running down the hill with the bicycle and that she fell on some metal when she let go of it and got hurt in her private part. The younger cousin testified that after she got hurt, the older sister just got up and walked to

21

the house.  After repeated questioning, he testified that he specifically remembered that the older sister had been wearing blue sweat pants, and not jeans, and that the sweat pants were torn in the front.  The younger cousin also testified that, contrary to the older sister's uncle's testimony at trial, the uncle was not at the home on the day the accident happened and that, if he said differently, the uncle would be wrong.  Thus, the boy's testimony contradicted that of one of the key defense witnesses at trial.  The younger cousin testified that defendant's girlfriend and the older sister's grandfather would have known he was at the house on the day of the accident and that they all knew he was with the older sister when the accident happened.  He also testified both that he had told someone about the bicycle accident a couple minutes after it happened and that he never told anyone about the bicycle accident at all.

After the hearing, the judge denied the motion for new trial and sentenced defendant to fifteen to forty years for the first-degree criminal sexual conduct count and ten to fifteen years for the two counts of second-degree criminal sexual conduct.

## B. SUBSEQUENT TESTIMONY REGARDING THE BICYCLE ACCIDENT

The cousins testified again at the *Ginther* hearing, and their testimony at the *Ginther* hearing contradicted much of the testimony given previously at the hearing regarding the motion for a new trial.[4]

The older cousin testified that the bicycle was like a unicycle and that it was not possible to ride it. Instead, people ran behind the bicycle holding the handlebars. Contrary to his testimony at the motion for a new trial, the older cousin testified, "*But I didn't see her get hurt on the bike, though.*" (Emphasis added.) He further testified, "I didn't see the bike part hit her, but I knew where she was hurt at." He also testified that the older sister did not walk up the hill as he had previously testified, but instead that her mother and an aunt went down the hill and got her. The older cousin testified that the hill was over fifty feet long and that he was at the top of the hill at the time of the accident, not at the

---

[4] Justice KELLY's characterization of the trial court's decision at the *Ginther* hearing is also misleading. The trial court gave a very detailed decision, finding not that the boys were unable to remember clearly at the time of the *Ginther* hearing, but that the court did "not believe that the witnesses, Mr. Goldstein is alleged to have failed to interview, would have been of assistance to the Defendant and would have directly exculpated the Defendant on the CSC-I offense. . . ."

bottom of the hill as he had previously testified.  He testified that he talked to his mother about the accident shortly after it happened, but later said he didn't remember whether he talked to her or not.  Finally, he also testified that on the morning of the hearing he was talking with his mother and grandmother "about how the jury screwed up."  He stated:

> Q.    Okay.  You chatted with somebody this morning about this?
>
> A.    Just about – well, rumor – well, what I heard about the jury and how they messed and that was about it this morning.
>
> Q.    Your mom told you what this was all about?
>
> A.    Yeah.
>
> Q.    Okay.  She told you why you were here?
>
> A.    Um hm.
>
> Q.    Yes?
>
> A.    Yes.
>
> Q.    Okay.  And she told you what to say?
>
> A.    No.
>
> Q.    Okay.  What did she tell you?
>
> A.    *She told us that we're going here to see if we can help Bill.* [Emphasis added.]

The younger cousin testified, contrary to his brother's testimony, that both he and defendant actually

rode the bicycle the day of the accident. This testimony placed defendant at the scene of the injury and directly contradicted with the testimony of all of the defense witnesses at trial, who had testified that defendant was *not* at the scene when the older sister was injured. He testified that the bicycle had both a seat and pedals, again contrary to his brother's testimony. He testified that, contrary to his previous testimony, the older sister was riding the bicycle and not running behind it. He stated that he was at the top of the hill with his brother at the time of the accident, and that the older sister was injured by the handlebars on the bicycle, not by the pile of metal at the bottom of the hill as he had previously testified:

> *Q.* Okay. So [the older sister] didn't run into a pile of metal at the bottom of the hill?
>
> *A.* No.
>
> *Q.* That didn't happen?
>
> *A.* Right. That did not happen.

Finally, when the younger cousin was questioned about the older sister's clothes, the following exchange took place:

> *Q.* [The older sister] was wearing clothes?
>
> *A.* Yes.

*Q.* Do you remember if she had on long pants or short pants?

*A.* She had on long pants.

*Q.* Okay.

*A.* And I only know that they were blue. I don't know if they were sweat pants or jeans. I have no idea.

*Q.* What made you say that about sweat pants or jeans?

*A.* Because she had a pair of sweat pants and she had a pair of jeans and I know they were both blue.

Recall that, at the motion for a new trial, the younger cousin had insisted that the older sister was wearing sweat pants and not jeans, and that he knew the difference between the two. He was the only person to testify that the older sister was not wearing jeans. His spontaneous statement that he no longer knew if the older sister was wearing sweat pants or jeans prompted the following exchange:

*Q.* Okay. Did your mom or anybody in your family talk to you about what you were going to testify to today?

*A.* Only my mom.

*Q.* Okay. What did your mom talk to you about?

*A.* *She said I was testifying to see if I could get Grant-Bill Grant out.*

*Q.* Get Bill Grant off?

26

*A.* Um hm. [Emphasis added.]

Thus, the boys' testimony gave no coherent explanation of whether they actually saw or remembered the alleged accident, how the alleged accident occurred, where the alleged accident occurred, or who was present when the alleged accident occurred. Given the numerous inconsistencies in the boys' testimony regarding the bicycle accident and the boys' testimony that they were trying to "help" defendant or "get [defendant] out," the boys' testimony on retrial will be subject to impeachment. Given the inherent problems in using this testimony, it will be difficult on retrial to establish with any certainty any details surrounding the alleged bicycle accident.

## IV. CONCLUSION

In her opinion, Justice KELLY ignores both the facts and the law. Rather than placing the burden on defendant to demonstrate the ineffective assistance of his counsel and reviewing defendant's claim with the strong presumption that counsel's actions constituted sound trial strategy, the opinions of both Justice KELLY and Justice TAYLOR conclude, in hindsight, that, because those justices would have presented a different strategy, counsel was

27

ineffective. This is an unprecedented and unwarranted departure from our Sixth Amendment jurisprudence. Application of the law to the facts of this case compels the conclusion that counsel thoughtfully chose a trial strategy and pursued that strategy. Counsel's contested actions were all deliberately chosen to execute counsel's chosen strategy. Defendant has failed to demonstrate any error by his counsel, let alone one that undermined confidence in the outcome. Rather, all defendant has shown is an unfavorable result. Until today, an unfavorable result was not enough to demonstrate ineffective assistance of counsel. With all respect due the opinions of Justice KELLY and Justice TAYLOR, I believe it still is not. Accordingly, I would affirm the decision of the Court of Appeals.

Maura D. Corrigan
Elizabeth A. Weaver
Robert P. Young, Jr.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                            No. 119500

WILLIAM COLE GRANT,

    Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

I respectfully dissent from the majority's holding that the defense counsel was constitutionally ineffective.

The older sister initially told everyone, including her treating physician, that she had been injured in a bicycle accident. At trial, the older sister testified that there had been no bicycle accident and that her injury had resulted from defendant's sexual assault. The lead opinion's finding that defense counsel was constitutionally ineffective is based on defense counsel's pretrial failure to investigate to determine if the bicycle accident had in fact occurred.

The lead opinion's basic premise is unsupported because there is nothing in the record to show that defense counsel knew of the older sister's inconsistent statements

before trial. The lead opinion relies on one source of information—a report by the second doctor—to support its theory that defense counsel knew or should have known before trial that the older sister had given inconsistent statements about the cause of her injury before trial.

This report by the second doctor is not in the record before us. No one testified about the contents of the referenced report, nor was the report admitted into evidence. The lead opinion's assertion that the second doctor's report *may* have indicated that the older sister had inconsistently described the cause of her injuries is mere speculation, unsupported by the record.

Rather, the evidence properly before us indicates that defense counsel had no reason to know that the older sister would testify that there had been no bicycle accident. In the June 7, 2000, *Ginther*[1] hearing defense counsel repeatedly testified that the accident was not disputed:

> *Q.* Would it have been of assis-, of assistance to have an eyewitness to the accident?
>
> *A.* Only if it was disputed. The accident was not disputed. The girl never disputed it. [The sisters' uncle] testified what he, or was willing to testify to what he observed. And it,

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

and one of, one of the things that he observed was the girl saying, "I had an accident."

\* \* \*

*Q.* Alright. Maybe to the extent that it might have assisted in the defense of the position that any injuries that the girl sustained, she sustained as a result of the bicycle accident?

*A.* No. Maybe to the extent if the, if the accident was disputed, helping the jury decide whether the accident actually occurred or not. But there was no dispute that the girl said to [her uncle], in [her uncle's] presence and in the presence of his sister, that she fell. She had an accident. So that issue was not in dispute.

\* \* \*

*A.* No, my te-, my statement all this morning has been that I didn't think we needed to prove that the accident occurred because I didn't think the occurrence of the accident was in dispute.

The excerpts from the *Ginther* hearing that the lead opinion quotes, *ante* at 15-16, to support the proposition that "defense counsel acknowledged that it was important to establish that the bicycle accident occurred" actually demonstrate that prior to trial defense counsel did not know that it would be important to establish that a bicycle accident had occurred.

Further, on January 24, 2001, defendant filed a "proposed statement of facts" with the circuit court.

Defendant's proposed statement of facts included two points which indicated that the trial counsel did not know before trial that the accident was disputed:

> 31. Goldstein [trial counsel] did not call an eye witness to the bike accident at the trial and did not think that an eye witness would have been of any assistance to him since he believed that the bike accident was not disputed by the alleged victim.

> 32. Goldstein did not believe that an eyewitness to the bike accident was important for purposes of linking the alleged victim's injury to the bike accident since he felt that such an eyewitness would have only been important to the Defendant's defense if the bike accident itself was in dispute, TR 40, and that the only thing an eyewitness to the bike accident could testify to was that the accident occurred. TR 91. Goldstein, however, did not believe that the bike accident was in dispute or that the same was "relevant." TR 40; 89; TR 110.

The filing concluded with the plea that "Defendant hereby requests that this Honorable Court adopt the above reference facts as the relevant facts applicable to the issue of whether or not Defendant's trial attorney was effective, as limited by the Court of Appeals." January 24, 2001, proposed statement of facts.

I agree with Chief Justice Corrigan and Justice Young that defendant did not meet his burden of showing that his attorney's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there is

4

a reasonable probability that the result of the proceeding would have been different.  *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994) (adopting the *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 [1984], standard of ineffective assistance of counsel).  There is no evidence in the record before us to show that defense counsel knew of the older sister's inconsistent statements before trial; rather, the evidence properly before us indicates that defense counsel had no reason to know that the older sister would testify that there had been no bicycle accident.  I would affirm the decision of the Court of Appeals.

> Elizabeth A. Weaver
> Maura D. Corrigan
> Robert P. Young, Jr.

5

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                       No. 119500

WILLIAM COLE GRANT,

    Defendant-Appellant.

_____

YOUNG, J. (*dissenting*).

I respectfully dissent. I believe that the wisdom of deferring to the trial court's determination whether ineffective assistance of counsel has been demonstrated is a sound policy. See *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). The trial court, which has first-hand knowledge of the witnesses and the conduct of the trial, is in the best position to assess not only whether defense counsel's trial performance has been deficient, but whether any such deficiency might have altered the outcome of the trial.

As is aptly demonstrated by the number and variety of opinions this case has generated, this case is one that is highly fact-sensitive and productive of no clear precedent that can provide guidance for future cases. Because I do

not believe that the trial court erred in its determinations on the claim of ineffective assistance of counsel in the several hearings it conducted on this question, I would affirm the convictions.

Robert P. Young, Jr.
Maura D. Corrigan
Elizabeth A. Weaver