PEOPLE v JOHNSON

Docket No. 102949. Decided April 2, 1996. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, affirmed the decision of the Court of Appeals.

Johnnie Johnson, Jr., was convicted by a jury in the Oakland Circuit Court, Richard D. Kuhn, J., of second-degree murder and possession of a firearm during the commission of a felony. Later, he pleaded guilty of being an habitual offender, third offense. After sentencing, the court denied the defendant's motions for a new trial and for an evidentiary hearing regarding several eyewitnesses who, he alleged, could testify regarding his innocence. The court concluded that the new evidence was cumulative and probably would not change the result, and that the defendant failed to show why his trial counsel, using due diligence, could not have discovered and produced the eyewitnesses during trial. Before addressing the merits, the Court of Appeals remanded the case for an evidentiary hearing regarding the proposed witnesses. After remand, the Court of Appeals, MARILYN KELLY and WHITE, JJ. (MACKENZIE, P.J., dissenting), reversed the defendant's convictions in an unpublished opinion per curiam, explaining that the failure to call the known exculpatory witnesses was a denial of the effective assistance of counsel (Docket No. 136960). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY, and Justices BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court *held*:

The exculpatory evidence that was not presented to the jury is so substantial that it could have changed the outcome of the trial.

1. A defendant who asserts a denial of effective assistance of counsel must show that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and that the deficient performance prejudiced the defense to the extent that the defendant was deprived of a fair trial with a reliable result. The defendant further must overcome the presumption that the challenged action was trial strategy and must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

2. While failure to call supporting witnesses inherently does not amount to ineffective assistance of counsel, on the record in this case, the defendant has satisfied each of the requirements to show denial of effective assistance of counsel. During the evidentiary hearing, counsel's explanation of whether his actions were in pursuance of a trial strategy evidenced no sign that he made a strategic decision not to call the six witnesses to testify regarding the events that occurred on the night of the shooting. Further, trial counsel failed to offer testimony that meets even minimal standards of performance for his client or of his obligation as an officer of the court.

Justice CAVANAGH, concurring, stated that the opinion of the majority includes the unnecessary and potentially misleading statement: "We do not hold that the failure to call supporting witnesses inherently amounts to ineffective assistance of counsel." In the abstract, the statement is not inaccurate, but, in the context of the analysis preceding it, it emphasizes a factor not at all emphasized in the actual analysis. The opinion is simply not susceptible of being read as the statement implies. Its inclusion does not serve to clarify the opinion, but, rather, serves only to create the possibility that it will be cited narrowly and inaccurately for the proposition contained in the statement. If the statement at issue here were deleted, part IV of the opinion would unambiguously and accurately summarize the opinion's analysis and holding with regard to the ineffective assistance of counsel claim. Nothing further should be added.

Affirmed and remanded for a new trial.

Justice LEVIN, writing separately, would deny leave to appeal, because the Court of Appeals did not err in reversing the judgment of conviction, and in remanding for a new trial.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Richard H. Browne*, Assistant Prosecuting Attorney, for the people.

*Young & Kaluzny* (by *Stuart L. Young*) for the defendant.

PER CURIAM. The defendant was convicted of second-degree murder and felony-firearm, and as an habitual

offender. However, the Court of Appeals set aside the convictions and ordered a new trial on the ground that he was denied effective assistance of trial counsel. We affirm.

I

Daryl Smith[1] was fatally shot in April 1989, outside Big Art's Paradise Lounge in Pontiac. This was part of a larger affray that included the defendant's father, Johnnie Johnson, Sr., fatally shooting a man named Gary Moses.[2]

The defense theory was that Mr. Smith was himself shooting at the fleeing defendant, and was shot by an unknown person. The tavern owner's testimony supported this defense. The contrary evidence included the testimony of a woman who said that she actually saw the defendant shoot Mr. Smith.

At the conclusion of a jury trial, the defendant was convicted of second-degree murder[3] and possession of a firearm during the commission of that felony.[4] He later pleaded guilty as an habitual (third) offender.[5] He was sentenced to a term of life in prison, and a consecutive two-year term for felony-firearm.

---

[1] Mr. Smith's given name is sometimes spelled "Darryl."

[2] The elder Mr. Johnson acknowledged shooting Mr. Moses, but said that he did so in a struggle to prevent Mr. Moses from shooting Johnnie Johnson, Jr., who he said was fleeing and being fired upon by Mr. Smith. Mr. Johnson, Sr., was convicted and sentenced to a twenty- to fifty-year term for second-degree murder, and a consecutive two-year term for felony-firearm. The Court of Appeals later affirmed his conviction. Unpublished opinion per curiam, issued July 24, 1992 (Docket No. 125931). This Court denied leave to appeal. 441 Mich 927 (1993).

[3] MCL 750.317; MSA 28.549.

[4] MCL 750.227b; MSA 28.424(2).

[5] MCL 769.11; MSA 28.1083.

After sentencing, the defendant filed several motions in circuit court. These included a motion for a new trial and a motion for an evidentiary hearing with regard to several named persons who were said to be eyewitnesses who could testify regarding the defendant's innocence, though they had not been called to testify at trial. The defendant's motion was later supported with affidavits from six individuals, each of whom swore that he personally witnessed the entire episode and that the defendant did not shoot a gun at any time.

The motions were denied by the circuit court in December 1990. Applying a four-part test,[6] the circuit court concluded that "[t]he new evidence is cumulative since Defendant presented eyewitnesses at trial who testified as to his innocence and including the new evidence upon retrial will probably not cause a different result." The court also said that the defendant "failed to show why his trial counsel could not, using due diligence, have discovered and produced the six alleged eyewitnesses at trial."

Before addressing the merits, the Court of Appeals remanded this case to the circuit court for an evidentiary hearing with regard to the proposed witnesses. The ensuing testimony was summarized in the circuit court's findings:

---

[6] For a new trial to be granted on the basis of newly discovered evidence, it must be shown that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) including the new evidence upon retrial would probably cause a different result; and (4) the party could not, using reasonable diligence, have discovered and produced the evidence at trial. See *People v Snell*, 118 Mich App 750, 766-767; 325 NW2d 563 (1982), lv den 417 Mich 1032 (1983); *People v Stricklin* [162 Mich App 623; 413 NW2d 457 (1987)]. [*People v Bradshaw*, 165 Mich App 562, 567; 419 NW2d 33 (1988).]

This matter is before the Court pursuant to an order of the Court of Appeals dated July 2, 1993. Having reviewed. Defendant's proposed findings of fact and People's proposed findings of the trial court and having conducted an evidentiary hearing, the Court makes the following determinations.

Dwayne Carrol, Dwight Carrol, Jesse Roberson III, and Rodney Akins all testified that they were present during the shooting, that Defendant did not shoot the victim, and that they informed trial attorney, Darryl Mitchell, that Defendant was not involved in the shooting. Dwight Carrol was called as a witness to testify on behalf of Defendant at the trial. Clovell Grandberry testified that he did not see the whole event and that he did not tell anyone about what he did see. Robert E. Taylor testified that Defendant did not participate in the shooting but did not tell the police. Attorney Mitchell testified that he did not specifically remember speaking with the above named individuals but that he might have. Mitchell further testified that he heard from many people at the time of trial but could not indicate what they told him or who they were. Detective Nolan [Gotschell], the Officer in charge of the case, testified that he was not aware of these witnesses before or during the trial.

The Court finds that four of the six witnesses were known to the defense before and during trial. The Court further finds that the other two witnesses, who did not contact Attorney Mitchell, were known by the other four witnesses and could have been produced for trial. Based upon the testimony heard at the Evidentiary Hearing, the Court finds that the evidence is not newly discovered evidence and that a new trial should not be granted.

Following those proceedings on remand, the Court of Appeals reversed the defendant's convictions.[7] The Court of Appeals explained that the failure to call

---

[7] Unpublished opinion per curiam, issued April 21, 1995 (Docket No. 136960).

these known exculpatory witnesses[8] was a denial of effective assistance:[9]

> In his supplemental brief, defendant effectively concedes that based on the court's findings, he is not entitled to a new trial based on newly discovered evidence. Defendant argues, however, that he is entitled to a new trial because justice was not done, MCL 770.1; MSA 28.1098, and because he was denied a fair trial due to ineffective assistance of counsel.
>
> Counsel offered no explanation for failing to call the witnesses. The prosecutor reasons that the only explanation is that the witnesses did not tell defense counsel about their "alleged observations." This is pure speculation. Counsel conceded that he might have spoken to the witnesses and that he heard from many people but could not say who they were or what they told him. In the face of the witnesses' direct testimony that they spoke to defense counsel, we will not assume, based on counsel's equivocal testimony, that defense counsel was not informed of these witnesses or their alleged observations. Moreover, the prosecutor's conclusion is inconsistent with the court's implied finding that at least four of the witnesses contacted trial counsel. We conclude that counsel's failure to call these witnesses fell below an objective standard of reasonableness. *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

                    *    *    *

> While the witnesses' testimony may have been cumulative of Art Adams' and defendant's father's testimony, in the face of the confusion at the scene, the conflicting testimony, the character of the evidence that defendant killed Smith, and

---

[8] As noted by the circuit court, one of the six did testify at trial. However, the witness explained at the hearing that his trial testimony concerned an incident between Mr. Moses and the defendant, that occurred several days before the shooting that gave rise to this prosecution.

[9] The Court of Appeals also found ineffective assistance as the result of "counsel's knowledge of and failure to explore" a supplemental police report. In light of our analysis of this matter, we need not reach this second ground.

the other possible sources of the fatal bullet, the jury may indeed have been persuaded by the additional evidence. Counsel's representation deprived defendant of a fair trial. *Id.* at 303.

In dissent, Judge MACKENZIE said that the testimony would have been cumulative of the testimony of Arthur M. Adams (the tavern owner) and of the defendant's father, both of whom said that the defendant did not shoot Mr. Smith. She further said that the defendant "has not demonstrated that the witnesses' testimony would have resulted in a different verdict, or that their absence at trial prejudiced him." Slip op, p 1.

The prosecutor has applied to this Court for leave to appeal.

II

In *People v Pickens, supra,* we adopted the standard stated in *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

As we further explained in *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995):

> In *Strickland*, the United States Supreme Court stated that a claim of ineffective counsel requires a showing that "counsel's performance was deficient" and a showing that "the deficient performance prejudiced the defense." 466 US 687. The United States Supreme Court further explained that "every effort [must] be made to eliminate the distorting effects of hindsight," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 US 689. Finally, the Court placed on the defendant the obligation to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 US 694.

III

A trial is not simply a balance scale—the party with the greater number of witnesses does not always prevail. Yet it is quite significant that the defendant has located *six* supporting witnesses. The circuit court has found that at least four were eyewitnesses who would testify that the defendant did not shoot Mr. Smith. It is true that the defendant's father (a codefendant) and the tavern owner already testified to that effect. However, the exculpatory evidence not presented to the jury is so substantial that we agree with the Court of Appeals that it could have changed the outcome of the trial.

The issue is whether the defendant was denied effective assistance of counsel, and one must consider whether the actions of counsel were in pursuance of a trial strategy. At the evidentiary hearing, the defendant's trial attorney was the first witness, and he

was given a second opportunity to explain himself after seven other witnesses had taken the stand. On both occasions, however, his testimony was remarkably vague and inconclusive. In essence, he said that he had spoken with two, or perhaps three, of the six witnesses, but had little or no recollection of what was said. This is a representative passage from his testimony:

*Q.* Mr. Mitchell, I just want to make sure that we have the record straight.

You testified that you don't remember speaking with some of these witnesses?

*A.* Yes.

*Q.* Are you saying to us that you didn't, or you just don't remember?

*A.* Well, let me explain it, and as I pointed out last week when we were here. This young man is in jail for the rest of his life. You know, I am not going to say I play God and say that I unequivocally did not speak to these people. I can't say that. I spoke to a lot of people on his behalf.

So, you know, in that sense I very well could have spoken to these individuals. I could very well have spoken to them.

Now, as to what I said to them, and what they said to me, I have no recollection. So, I want to be—I can't say, and I have taken an oath here, that I did or didn't speak to them. But, I remember the Carrols, and I remember Taylor, I believe. Because there is something about it that brings those three people to mind.

The other three, or two, I guess one person was incarcerated, the other two, I would have to see them. But, I spoke to a number of people on Mr. Johnson's behalf.

*Q.* All right. I was just trying to find out from you if your word "remember" meant more than the word "remember" means to me. I think you have adequately explained that.

I want to make sure I understand another thing you said. You mentioned you don't remember seeing their name in

your file. Does this mean that you didn't talk to them because their name isn't in your file?

*A.* No. It is interesting though . . .

*Q.* Your answer is no?

*A.* No, it doesn't mean that I didn't talk to them, because I'm not so sure that the file I have now is an entire file, if you want me to be candid. I went through it and tried to pull—to pull the names and see this was a murder case. We spent a lot of time on the case . . .

We find in this explanation no sign that counsel made a strategic decision not to call the six witnesses to testify regarding the events that occurred on the night of the shooting.

IV

As indicated above, a defendant who asserts a denial of effective assistance must show that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and that the deficient performance prejudiced the defense to the extent that the defendant was deprived of a fair trial with a reliable result. The defendant also must overcome the presumption that the challenged action was trial strategy. Further, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. On this record, we find that the defendant has satisfied each of these requirements.

We do not hold that the failure to call supporting witnesses inherently amounts to ineffective assistance of counsel. However, on this record, we find that the defendant has satisfied each of these requirements.

V

We further observe that trial counsel failed to offer testimony that meets even minimal standards of performance for his client or of his obligation as an officer of the court. Fairly summarized, the testimony was that he had no file entries, no recollection, and not even a routine practice that might indicate what he did on defendant's behalf. Indeed, this sort of performance, falling far below the standard of acceptable conduct, may subject an attorney to disciplinary proceedings.

We reach this conclusion regarding counsel's performance by comparing the record of this matter with MRPC 1.1, which provides:

> A lawyer shall provide competent representation to a client. A lawyer shall not:
>
> (a) handle a legal matter which the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it;
>
> (b) handle a legal matter without preparation adequate in the circumstances; or
>
> (c) neglect a legal matter entrusted to the lawyer.

We also note the requirements of MRPC 1.3:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

VI

For these reasons, we affirm the judgment of the Court of Appeals, which remanded this case to the circuit court for new trial. MCR 7.302(F)(1).

BRICKLEY, C.J., and BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

CAVANAGH, J. (*concurring*). I agree with the majority's analysis and its disposition of this case. However, I write separately to express my disagreement with the inclusion in the opinion of an unnecessary and potentially misleading statement.

At the end of part IV, wherein the opinion restates all the elements a defendant must satisfy to establish a claim of ineffective assistance of counsel and concludes that "the defendant has satisfied *each* of these requirements" (emphasis added), the opinion states: "We do not hold that the failure to call supporting witnesses inherently amounts to ineffective assistance of counsel." In the abstract, this statement is not inaccurate, but, in the context of the analysis preceding it, this statement emphasizes a factor not at all emphasized in the opinion's actual analysis. The opinion is simply not susceptible of being read as this statement implies. Inclusion of this statement does not serve to clarify the opinion, but, rather, serves only to create the possibility that this opinion will be cited narrowly and inaccurately for the proposition contained in the statement.

The opinion's analysis and its ultimate conclusion rely on several factors other than defense counsel's failure to call six witnesses who would have provided exculpatory evidence, most saliently the requirement that a defendant must show a reasonable probability that counsel's errors affected the outcome of the trial. And with regard to the specific issue of these uncalled witnesses, the opinion expressly relies on the fact that, in his testimony at the evidentiary hearing, defendant's trial attorney's "explanation [con-

tained] no sign that counsel made a strategic decision not to call the six witnesses to testify regarding the events that occurred on the night of the shooting."[1] *Ante* at 124.

If the statement at issue here were deleted, part IV of the opinion would unambiguously and accurately summarize the opinion's analysis and holding with regard to the ineffective assistance of counsel claim:

> As indicated above, a defendant who asserts a denial of effective assistance must show that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and that the deficient performance prejudiced the defense to the extent that the defendant was deprived of a fair trial with a reliable result. The defendant also must overcome the presumption that the challenged action was trial strategy. Further, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. On this record, we find that the defendant has satisfied each of these requirements. [*Ante* at 124.]

I would add nothing further to this holding.

LEVIN, J. (*separate opinion*). The majority peremptorily affirms, pursuant to MCR 7.302(F)(1), the judgment of the Court of Appeals, which remanded this case to the circuit court for a new trial. I would deny leave to appeal, because I agree that the Court of

---

[1] That the mere failure to call supporting witnesses is not, and could not be, the basis for a finding of ineffective assistance of counsel is also made clear earlier in the opinion:

> The issue is whether the defendant was denied effective assistance of counsel, *and one must consider whether the actions of counsel were in pursuance of a trial strategy*. [*Ante* at 122 (emphasis added).]

Appeals did not err in reversing the judgment of conviction, and in remanding for a new trial. I join and concur in Justice Cavanagh's comments concerning the statement in the majority opinion adverted to in his concurring opinion.