# STATE OF MICHIGAN

# COURT OF APPEALS

In the Matter of D. LAVICTOR-HYDE, Minor.

UNPUBLISHED
November 18, 2014

No. 321390
Chippewa Circuit Court
Family Division
LC No. 09-013851-NA

Before: BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Respondent-father appeals as of right from the trial court's order terminating his parental rights to his child[1] pursuant to MCL 712A.19b(3)(c)(*ii*) (other conditions exist that cause the child to come within the court's jurisdiction), (3)(g) (failure to provide proper care or custody), and (3)(j) (reasonable likelihood of harm).[2] For the reasons set forth in this opinion, we affirm in part but remand this matter to the trial court to consider whether to conduct a *Ginther*[3] hearing or to resolve the issues set forth herein by making a determination as to whether trial counsel was ineffective such that there exists a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

Our analysis of this case is made troublesome by the fact that the only brief submitted on appeal was that of respondent, and that brief was lacking in substantive analysis. The brief that was submitted on appeal raised two issues, namely that the trial court violated respondent's right to participate in child protective proceedings under *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010), and that trial counsel was ineffective.

First, respondent argues that the trial court failed to provide him with a meaningful opportunity to participate in the child protective proceedings. We review this unpreserved issue

---

[1] The court also terminated the parental rights of the child's mother, but she has not appealed that decision.

[2] Respondent-father and the child are registered members of the Sault Ste Marie Tribe of Chippewa Indians.

[3] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

Under both statute and court rule, a respondent has the right to participate in child protective proceedings. *In re Mason*, 486 Mich at 169. This participation must include "a meaningful opportunity to comply with a case service plan." *Id*. Failure to engage a parent in the child protective proceedings leaves a gap in the evidence that precludes termination of parental rights. *In re DMK*, 289 Mich App 246, 248; 796 NW2d 129 (2010). Further, "[i]ncarceration alone is not a sufficient reason for termination of parental rights," *In re Mason*, 486 Mich at 146, and "a parent's past failure to provide care because of his incarceration also is not decisive." *Id*. at 161. Accordingly, the Department of Human Services (DHS) must offer services to an incarcerated parent. *Id*. at 152.

Respondent contends that the trial court erroneously terminated his parental rights merely because he was incarcerated. *In re Mason*, 486 Mich at 146. This argument misconstrues the acts of domestic violence between 2009 and 2012, thus showing that he habitually engaged in such conduct. Repeated acts of domestic violence by a parent against a romantic partner may show that the child could suffer injury if returned to the parent's household. See *In re Sours*, 459 Mich 624, 635-636; 593 NW2d 520 (1999) (discussing MCL 712A.19b(3)(b)(*ii*)). In other words, the underlying reason for termination of parental rights was habitual domestic violence, and respondent's incarceration was incidental to that conduct. Further, this case is factually distinguishable from *In re Mason* in that, the respondent was incarcerated before the children were removed from the home, in June 2007. *In re Mason*, 486 Mich at 147. DHS failed to offer the respondent any significant services between June 2007 and termination of parental rights in February 2009. *Id*. at 150. Thus, the issue in *In re Mason* was the lack of available services throughout the proceedings. Here, in contrast, services were available to respondent from the onset of the proceedings until his April 2013 incarceration for the September 2012 act of domestic violence. These services included behavioral health for respondent's anger management. Simply put, any lack of available services while respondent was in Chippewa County Jail was attributable to his own conduct, whereas the lack of available services in *In re Mason* was attributable to the inaction of DHS. *Id*. at 146. Therefore, respondent is not entitled to relief on this issue.

Next, respondent argues that he was denied the effective assistance of counsel. "[T]he principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." MCL 712A.17c(7); *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2001), overruled on other grounds in *In re Sanders*, 495 Mich 394, 422; ___ NW2d ___ (2014). Accordingly, respondent's failure to raise this issue in a motion for a new trial or to request a *Ginther* hearing limits our review to mistakes apparent from the record. Compare *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Whether respondent was denied the effective assistance of counsel is "a question of constitutional law subject to de novo review." *In re CR*, 250 Mich App at 197. To establish ineffective assistance of counsel, respondent "must show that h[is] trial counsel's performance was deficient, i.e., s[he] must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced h[im] that it denied h[im] a fair trial." *Id.* at 198 (citations and internal quotations omitted). This necessarily entails proving prejudice to respondent, which means that there is "a reasonable probability that, but for

counsel's unprofessional errors, the result would have been different." *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

We begin our analysis by noting that appellate counsel's assertions on this issue are woefully insufficient. If not for our review of the record, we would deem the issue abandoned. We have little doubt but that the trial court was faced with the same obstacles that faced this Court in deciding this matter, namely, Anishnaabek Community and Family Services (ACFS) workers who virtually forgot that respondent was a party to this action, hence failing to make any effort on respondent's behalf coupled with a trial counsel who failed to make any arguments on behalf of respondent or grasp the issues that permeated this matter.

On remand, should the trial court decide to conduct a *Ginther* hearing, the trial court should make inquiry into why trial counsel failed to bring to the attention of the trial court the heightened protections afforded under the Indian Child Welfare Act, (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.*[4] The ICWA requires the testimony of a qualified expert witness to prove beyond a reasonable doubt that continued custody would likely result in serious emotional or physical damage to the child, 25 USC 1912(f), and the entirety of the expert's testimony is worth repeating here: "Yes I do believe that. The parents have been offered multiple services and has [sic] not benefited from those service [sic]." Trial counsel failed to question the witness to glean the factual underpinnings for this "expert" opinion. On remand, the trial court may wish to examine trial counsel to ensure that they understood the Act, and the reasons behind their failure to question the "expert" witness. Should the trial court conclude that trial counsel was ineffective on this issue, it must then proceed to determine whether this failure by counsel so prejudiced defendant that effectively denied him a fair trial, such that there exists a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Johnson*, 451 Mich at 124.

While the holding of *In re Sanders*, 495 Mich 394; ___ NW2d ___ (2014), is not strictly applicable to this case, it provides guidance about the presumptions that should be accorded to a parent at various stages of child protective proceedings. In that case, our Supreme Court explained that a dispositional hearing presumes a previous showing of parental unfitness, so the focus is on the best interests of the child or children. *Id*. at 418. The unadjudicated parent's rights are therefore "subordinated to the court's best-interest determination." *Id*. at n 14. In this case, respondent was never adjudicated as unfit. Yet at the dispositional hearing, the trial court placed the minor child in foster care because it apparently operated under the presumption that respondent was an unfit parent. It operated under this presumption because respondent's trial counsel never brought the issue to the attention of the trial court. The trial court then seemingly

---

[4] 25 USC 1912(d) of the ICWA, and MCL 712B.15(3) of the MIFPA, require proof that "active efforts" have been made to prevent the breakup of the Indian family.

[5] 25 USC 1912(f) of the ICWA, and MCL 712B.15(4) of the MIFPA, require proof beyond a reasonable doubt, supported by the testimony of at least one qualified expert witness, that continued custody "is likely to result in serious emotional or physical damage to the child."

placed the burden on respondent to prove that he was fit to parent, notwithstanding that DHS never proved that he was unfit to parent. Again, trial counsel failed to bring any of this to the attention of the trial court. On remand, the trial court may wish to make inquiry as to the reasons for trial counsel's failure to bring this to the court's attention, and if failure to do so exhibits a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Johnson*, 451 Mich at 124.

Further, the minor child's placement in foster care at the onset of these proceedings established the basis for escalating error. The testimony at the early review hearings showed that ACFS's plan was to place the minor child in the care of respondent-mother, and the services offered to respondent were more of an afterthought than an honest attempt to reunify respondent and the minor child. For example, the testimony at the dispositional hearing showed that respondent-mother was initially offered in-patient treatment for substance abuse and respondent was referred to Sault Tribe Behavioral Health for anger management. At the subsequent review hearing, the testimony showed that respondent-mother had been prematurely discharged from in-patient treatment because she used a controlled substance, and was also arrested for disorderly conduct a few weeks later. In contrast to respondent-mother, the testimony showed that respondent was "very diligent" in receiving services and had no significant issues. Yet the caseworker testified that the goal continued to be reunification with respondent-mother. And, as a second example, respondent-mother was able to secure a second opportunity at in-patient treatment facility after her first unsuccessful discharge, whereas respondent was told to go to emergency care for non-emergency counseling services when he was placed on the six-month ineligible list by Sault Tribe Behavioral Health for missing two appointments. We stress that one of those missed appointments occurred when respondent attended scheduled visitation with the minor child. Again, none of this was brought to the attention of the trial court by respondent's trial counsel.

Conspicuously absent from the record is any argument by respondent's trial counsel that there was insufficient evidence to prove that respondent was an unfit parent. Respondent's wrongdoing during these proceedings was an incident of domestic violence that occurred in September 2012—and services for domestic violence were not offered to respondent until the following month. As late as February 2013, the trial court stated on the record that respondent was "doing fairly well." Yet in March 2014, the trial court ruled that respondent could not parent the minor child because of his history of domestic violence. The only fact that reflected negatively on respondent between February 2013 and March 2014 was the April 2013 arrest for violating the no-contact order. However, the trial court did not mention that violation in its March 2014 opinion. Instead, the trial court focused entirely on respondent's history of domestic violence. There is a logical disconnect between "doing fairly well" in February 2013 and termination of parental rights in Mach 2014. It is unclear how or why the September 2012 incident did not warrant termination in February 2013 but did warrant termination in March 2014. It was incumbent on trial counsel to bring this to the attention of the trial court and we are left with no legitimate justification for their failure to do so.

Also lacking was any argument by trial counsel that unsupported presumptions against respondent are also evident in the trial court's opinion. The trial court repeatedly observed that respondent lived with his grandmother, but there was no evidence to suggest that the household of respondent's grandmother was somehow unfit for a child. Such evidence would not have

been difficult to obtain because the grandmother's house was *right across the street from ACFS.* It should have been brought to the trial court's attention that it is entirely possible that a single, employed father would provide a better household for his child by living with his grandmother than by living independently. While we note that no exhibits were admitted at the termination hearing, an updated service plan dated January 29, 2014 is included in the record. According to the updated service plan, respondent's grandmother, Valerie LaVictor, repeatedly contacted ACFS about visiting with the minor child. There was no argument presented to the trial court relative to this issue, and hence the trial court did not make mention of this contact in its order for termination. On remand, the trial court may wish to inquire why trial counsel failed to make any of these arguments to the trial court, and if that failure constituted ineffective assistance of counsel, whether there exists a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Johnson*, 451 Mich at 124.

Additionally, the trial court repeatedly observed that respondent had never exclusively cared for the minor child. But respondent was never given an opportunity to care for the minor child during these proceedings. Again, trial counsel never brought this to the attention of the trial court. The minor child was removed from respondent-mother's household in July 2011 and placed in foster care. The permanency plan was to return the minor child to respondent-mother's household in the future. And when respondent-mother relapsed and ceased all contact with ACFS, the trial court immediately proceeded to the termination stage without considering whether respondent would have been a fit parent. It is entirely possible that respondent would have been a fit parent, given that he was employed, and the undisputed testimony showed that he had a loving, appropriate bond with the minor child. However, we are left to speculate because no arguments on this issue were made to the trial court.

Furthermore, it appears that trial counsel failed to take into consideration any of the factors outlined above, leading us to question if there were any active efforts made to prevent the breakup of the Indian family. An after-the-fact referral for a weekly domestic-violence class, and six stamped envelopes, do not seem to satisfy "the heightened protections afforded by ICWA." *In re Morris*, 491 Mich 81, 99; 815 NW2d 62 (2012). Based on trial counsel's lack of making a proper record in this matter, we cannot adjudicate whether the evidence presented relative to respondent demonstrated beyond a reasonable doubt that continued custody by respondent would likely result in serious emotional or physical damage to the minor child. The only evidence on the record indicated that respondent had an appropriate relationship with the minor child, and the only instance when respondent placed the minor child in physical danger was in December 2009. We are left wondering why trial counsel failed to argue if that instance of domestic violence, coupled with respondent's history of domestic violence, did not warrant termination of parental rights, why it would be logical for the trial court to opine that a single additional instance of domestic violence outside the minor child's presence proved beyond a reasonable doubt that continued custody would likely result in serious emotional or physical damage to the minor child. Again, the trial court did not indicate such a belief at the February 2013 hearing.

On appeal, respondent argues that trial counsel was ineffective because he discouraged respondent from attending the termination hearing, failed to request an adjournment due to respondent's absence, and failed to present any evidence or arguments on respondent's behalf. As to the latter, it would have been of great assistance to this Court had appellate counsel set

forth the arguments that trial counsel failed to advance. As to the latter, we leave it to the trial court to decide if trial counsel was ineffective for giving respondent their opinion on how the case would likely conclude, and how respondent's failure to appear can be attributed to his trial counsel. Lastly, and again without any reference to affidavits or other supporting documentation, appellate counsel asserts that trial counsel never conferred with respondent while he was incarcerated. Again, we leave to the trial court to decide if this issue is worthy of its consideration in light of the other issues this Court has set forth relative to trial counsel's representation of respondent.

On remand, we are confident that the trial court will proceed in an expeditious manner to facilitate the resolution of the issues raised in this opinion. In order to expedite this matter on remand, the trial court may choose to conclude that trial counsel was ineffective and proceed directly to the second prong of *In re CR*, 250 Mich App at 197 to determine if there exists a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Johnson*, 451 Mich at 124.

Affirmed in part, and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

# Court of Appeals, State of Michigan

# ORDER

In the Matter of D. Lavictor-Hyde, Minor

Docket No.    321390

LC No.        09-013851-NA

Stephen L. Borrello
Presiding Judge

Deborah A. Servitto

Douglas B. Shapiro
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 21 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the Court may conduct a hearing pursuant to *People v Ginther,* 390 Mich 436, 443-444; 212 NW2d 922 (1973), or make a determination that trial counsel's performance fell below a standard of reasonablness and proceed directly to the question whether there exists a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

NOV 18 2014

Date

Chief Clerk