# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN DEMARSHA WHITE,

        Defendant-Appellant.

UNPUBLISHED
June 23, 2015

No.  320113
Saginaw Circuit Court
LC No.  13-039010-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN DEMARSHA WHITE,

        Defendant-Appellant.

No.  320289
Saginaw Circuit Court
LC No.  13-039010-FC

Before:  RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted of assault with intent to murder, MCL 750.83; discharge of a firearm at or in a building, MCL 750.234b; felon in possession of a firearm, MCL 750.224f; carrying a dangerous weapon with unlawful intent, MCL 750.226; carrying a concealed weapon, MCL 750.227; and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant appeals as of right, and we affirm.

In the early evening hours of July 22, 2013, a horrible assault occurred.  Lasharda Peoples saw her son, Edward Christopher, who was at that time standing at the corner of Hamilton and Wayne Streets in Saginaw.  Peoples walked over to him to ask for a cigarette.  As she walked back to her house, she heard a car swerve and stop.  She turned around and saw defendant get out of a vehicle and start shooting at her son.  Peoples was the only witness at trial that identified defendant.  Approximately eight months after trial, Peoples executed an affidavit recanting her trial testimony identifying defendant as the shooter.  Peoples averred that she believed defendant was the shooter based on surrounding events and circumstances, including

-1-

information she had received from her son, but she did not actually see defendant shoot at her son.

Subsequently, the matter was remanded from this Court to the trial court to hear a motion for new trial predicated on a claim of newly discovered evidence (People's recantation), as well as on defendant's claim that he received ineffective assistance of counsel at trial. *People v White*, unpublished order of the Court of Appeals, entered September 23, 2014 (Docket Nos. 320113, 320289).

At the hearing held on remand, Peoples acknowledged that she testified at trial that defendant was the shooter. However, Peoples testified, she could not see the shooter's face. She testified that she thought defendant was the shooter in part because of an earlier fight involving defendant, during which defendant told her son to "stay right here, I'll be right back." Peoples also testified that she thought defendant was the shooter because she had "run-ins" with him, and that after a previous run-in, her older son was killed. She also testified that she was on seizure medicine and was "going into an episode" at the time of the shooting.

Lakeisha Pringle testified with respect to defendant's claim that he had received ineffective assistance of trial counsel. Pringle testified that she and defendant had been in a dating relationship at the time of the shooting. She testified that defendant was with her at the hospital on July 22, 2013, after she had a severe asthma attack. Pringle admitted that she had no records to show that she was at the hospital on July 22, and she could not remember what time she went to the hospital or when she was released. She testified that she called the office of defendant's attorney, James Gust, eight or nine times and left messages with the secretary, but he never returned her call. Pringle explained that she left a message that she wanted to confirm defendant's alibi. Pringle stated that she tried to approach defense counsel at defendant's trial, but "never made contact." Gust testified that he could not be certain, but he recalled someone, possibly defendant's girlfriend, called him to tell him about an alibi for defendant. Gust testified that he talked to her and "the alleged time of the offense did not conform with the time that she said he was with her." Gust stated that he was unable to check his files regarding defendant's case because he gave the files to defendant's appellate counsel.

The trial court stated that it watched Peoples testify both at trial and at the hearing. The judge explained that at trial, Peoples was "feisty" and "very sure of herself," but that at the hearing, Peoples was "not feisty," "seems fearful," and "seems unsure of herself." The judge stated that she did not find Peoples's motion testimony credible, and did not find it to be a basis for a new trial. The judge also concluded that the evidence regarding Peoples's medication could have been discovered with due diligence before trial.

Regarding the claim that defense counsel was ineffective for failing to investigate an alibi, the judge held that the test for ineffective assistance was not met. The judge stated that she did not find Pringle's testimony "helpful or believable." The judge characterized as "absolutely incredible" Pringle's assertion that she called Gust eight or nine times and that she was even at the trial but could not connect with him. The judge denied defendant's motion for a new trial.

Defendant argues that the court erred in denying his motion for new trial predicated on a claim of newly discovered evidence, i.e., Peoples's recantation of her identification of defendant

-2-

as the shooter. This Court reviews the denial of a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "In reviewing the trial court's decision, due regard must be given to the trial court's superior opportunity to appraise the credibility of the recanting witness and other trial witnesses." *People v Canter*, 197 Mich App 550, 560; 496 NW2d 336 (1992). "Underlying questions of law are reviewed de novo . . . while a trial court's factual findings are reviewed for clear error." *People v Terrell*, 289 Mich App 553, 559; 797 NW2d 684 (2010) (internal citation omitted).

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). "For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) 'the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692, quoting *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996). "[T]he discovery that testimony introduced at trial was perjured may be grounds for ordering a new trial." *People v Barbara*, 400 Mich 352, 363; 255 NW2d 171 (1977). "However, where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *Canter*, 197 Mich App at 559.

Resolution of this issue rests with the fourth factor. The testimony of Peoples was the only evidence adduced at trial that identified defendant as the shooter. Defendant contends that without the testimony of Peoples, the prosecution could not place him at the scene of the crime or connect him to the crime in any way.

However, Peoples did not retract other testimony that provides circumstantial evidence that defendant was the shooter. "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Peoples maintained that she thought defendant was the shooter because of the earlier fight and defendant telling her son to "stay right here, I'll be right back." At trial, Peoples testified that it was less than 10 minutes between defendant saying he would be back and the shooting. Additionally, Peoples testified that defendant's friends had contacted her and told her not to come to court. At the motion hearing, Peoples admitted that her son said defendant was the shooter at first, but that he later told her that defendant was not the shooter. Peoples also admitted that she previously said her son was scared and that he did not come to court because he was afraid. Peoples admitted she was afraid of the defendant and then changed her statement to indicate she was afraid of the defendant's friends. The unretracted portion of Peoples's testimony provides sufficient circumstantial evidence that a jury could infer that defendant was the shooter beyond a reasonable doubt.

Further, the trial judge stated that Peoples's testimony at the motion hearing was not credible based on how Peoples appeared at the motion hearing compared to the trial, as well as People's admitted fear of defendant and then clarification indicating fear of defendant's friends.

This Court must give "due regard . . . to the trial court's superior opportunity to appraise the credibility of the recanting witness and other trial witnesses." *Canter*, 197 Mich App at 560.

Defendant argues that Peoples testified in a subdued manner at the motion hearing because the prosecutor discussed the consequences of perjury and mentioned the possibility that she could be arrested after testifying. However, the prosecutor did not ask Peoples about perjury until cross-examination. Defendant also contends that there were hints in Peoples's trial testimony that she did not testify truthfully at trial. Defendant points out that Peoples was impeached on several points at trial, and she reached unusual conclusions. This argument is essentially one of credibility, i.e., Peoples's motion hearing testimony is credible because there were hints from trial that she was lying then. However, this argument ignores the opposite conclusion: Peoples's motion hearing testimony is not credible because it is inconsistent with her trial testimony. In any event, the trial court is in a better position than this Court to determine Peoples's credibility.

Defendant also argues that the trial court erred when it found that he did not demonstrate ineffective assistance of counsel. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "This Court reviews a trial court's factual findings for clear error and reviews de novo questions of constitutional law." *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859, amended on other grounds 481 Mich 1201 (2008). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id*. at 130 (internal quotation omitted). "[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quoting MCR 2.613(C)).

"To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012), citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81.

"The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Here, the determination of whether trial counsel made an adequate investigation turns upon the credibility of trial counsel Gust and defendant's former girlfriend, Pringle. Gust recalled talking with someone, possibly defendant's girlfriend, about an alibi, but the time of the alibi and the time of the offense did not match. Gust testified that he could not be sure it was Pringle, but he only had one inquiry about an alibi in the last year, and he assumed it was this case. Pringle testified that she called Gust's office eight or nine times, left messages, and never got a call back. Pringle stated that she was prepared to testify that defendant was with her at the hospital on July 22, 2013. Pringle admitted that she had no hospital records, did not recall when she went to the hospital, how long she stayed, or when she was released.

Defendant predicates his claim of ineffective assistance on Gust's alleged failure to investigate Pringle's alibi claim. The judge found that Pringle's testimony was not helpful or believable. The judge thought that Pringle's claim that she called eight or nine times and never got a call back "doesn't make any sense." The judge also thought it was "incredible" that Pringle could remember defendant was with her on the specific day of the crime when Pringle could not recall anything else about the timeframe of her hospital stay. The judge found Gust's testimony credible regarding that he spoke with someone about an alibi for defendant, however the time of the alibi did not match with the time of the offense. Thus, the trial court essentially found that Gust did investigate the possibility that defendant had an alibi from the only information he received about such a defense.[1]

Deferring to the trial court's credibility determinations, nothing in the record undermines the court's conclusions. Moreover, defendant does not explain why he would not have insisted at trial that Pringle be called because she could provide him with an alibi. Therefore, defendant fails to show that counsel's representation fell below an objective standard of reasonableness. Defendant is also unable to show the requisite prejudice given the weight of the testimony adduced at trial, including Peoples's identification, and the less than conclusive nature of Pringle's testimony.

Finally, defendant argues that the prosecutor committed misconduct when he made a statement that implied that Peoples's son was afraid to testify at trial. Because this issue was not raised below, appellate review is limited to whether there was plain error that affected defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (internal quotation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764, (citations omitted; alteration by *Carines* Court).

Issues of prosecutorial misconduct are reviewed "on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). The disputed comment came during the following exchange between Peoples and the prosecutor:

---

[1] Defendant further argues that Gust violated MCR 6.005(H)(5) by not retaining defendant's trial files. This argument impacts Gust's credibility. The trial court assessed the credibility of Gust and the alleged alibi claim and found the alleged alibi claim was not credible. Thus, this possible violation by Gust is not determinative of ineffective counsel in this case since it was factored and weighed regarding to credibility.

*Q.* Even today, do you know where your son is at today?

*A.* My—which son?

*Q.* Edward?

*A.* No.  No, he's probably with the baby momma.  I don't know.

*Q.* Since this time, July 22nd, have you seen Edward at all?

*A.* Not that much.

*Q.* Okay.  You talk to him, at least?

*A.* Yes.

*Q.* All right.  *So you know he's someplace in the—safe, at this point?*

*A.* Yes.

*Q.* Okay, and, indeed, we've asked you if you know where he's at correct?

*A.* Right.

*Q.* And you don't know where he's at?

*A.* I don't.  [Emphasis added.]

Defendant suggests that the highlighted statement could lead jurors to infer that Peoples's son was unavailable because he was afraid to testify at trial.  However, the question does not in any way link defendant to the issue of her son's safety.  In context, the prosecutor is simply eliminating the possibility that her son was not available for trial because something had happened to him.  The jury would most likely wonder about the absence at trial of the apparent target of the shooting.

Even if the jury did interpret the prosecutor's statement in the manner suggested by defendant, the requisite prejudice is not shown.  Here, the primary evidence against defendant was Peoples's eyewitness testimony that defendant was the shooter.  The possible inference that Peoples's son might be afraid to testify would not have affected the outcome in light of that testimony.

Affirmed.


/s/ Amy Ronayne Krause
/s/ William B. Murphy
/s/ Deborah A. Servitto