*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 12, 2020

Plaintiff-Appellee,

v

No. 349100[1]
Wayne Circuit Court
LC No. 18-000442-01-FC

DANGELO FLEMISTER,

Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 349101
Wayne Circuit Court
LC No. 18-000443-01-FH

DANGELO FLEMISTER,

Defendant-Appellant.

Before: STEPHENS, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In Docket No. 349100, defendant appeals as of right his bench trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant to 19 years to 25 years' imprisonment for his AWIM conviction and two years' imprisonment for his felony-firearm conviction. In Docket No. 349101, defendant appeals as of right his conviction

---

[1] This Court has consolidated Docket Nos. 349100 and 349101. *People v Flemister*, unpublished order of the Court of Appeals, entered June11, 2019 (Docket Nos. 349100, 349101).

of third-degree fleeing and eluding, MCL 257.602a. The trial court sentenced defendant to 403 days in jail, with credit for time served, on that offense. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In the late evening on December 2017, the victim was socializing in the passenger seat of a coworker's vehicle in front of the victim's house. After a few minutes, two men, defendant and codefendant, Jevon Marshall-Perkins, approached the vehicle. Defendant approached the passenger door, pointed a gun at the victim's side, and told the victim to get out of the vehicle. As the victim exited the vehicle, his coworker drove away from the scene. Defendant asked the victim for money, but the victim said he had none. Defendant pointed the gun at the victim's face and pulled the trigger. However, the gun misfired, making a clicking sound instead. Defendant "did something with the gun to make it shoot," then gave it to his codefendant, who pointed the gun at the victim again, pulled the trigger, and shot the victim in the left side of his face. The victim fell to the ground and defendant and his codefendant got into a vehicle and drove away. The victim was taken by a family member to the hospital where he underwent surgery and remained for two or three days before being released.

Thereafter, the victim went to the police station and gave a statement about the assault incident, describing defendant as a 17 or 18-year-old "light skinned guy," who misfired the gun and handed it to codefendant. The victim described codefendant as "the dark-skinned guy" who shot the victim in the face.

On the same date as, but after the assault incident, Detroit police officers responded to a report of two carjackings and found the two identified vehicles, a Ford Fusion and Pontiac Grand Prix, traveling on Livernois Road. While the Fusion was stopped at a red light, officers pulled up behind it to conduct a traffic stop. One officer got out of the patrol car, approached the Fusion on the passenger side, and made eye contact with the driver. The driver then took off at a high rate of speed. The officers followed the Fusion, catching up to it after the Fusion veered off the road and crashed into a roadside object. The driver exited the Fusion and began running. The driver was stopped, detained, and identified as defendant.

## II. ANALYSIS

On appeal, defendant first contends there was insufficient evidence to support his AWIM conviction. Specifically, defendant asserts that there was no evidence that defendant knew or had reason to know that his codefendant would shoot the victim. We disagree.

### A. ASSAULT WITH INTENT TO COMMIT MURDER

A trial court's findings of fact in a bench trial may only be set aside when clearly erroneous. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). A finding is clearly erroneous if, although evidence supports it, "the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. This Court reviews a claim of insufficient evidence in a bench trial de novo. *Id*. at 473-474. "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474.

AWIM consists of three elements: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Ericksen*, 288 Mich. App 192, 195-196; 793 NW2d 120 (2010). "The intent to kill may be proved by inference from any facts in evidence." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish a defendant's state of mind[.]" *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

"A person who aids and abets the commission of a crime may be convicted as if he or she directly committed the crime." *Jackson*, 292 Mich App at 589. To establish a defendant has aided and abetted the commission of a crime, the prosecution must show:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*Id*. (quotation marks and citation omitted).]

"Aiding and abetting describes all forms of assistance rendered to the perpetrator, including any words or deeds that may support, encourage, or incite the commission of a crime." *Id*. As it relates to the intent of an aider and abettor, the prosecution must establish beyond a reasonable doubt that the defendant "intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006).

Here, viewing the evidence in the light most favorable to the prosecution, it is clear there was sufficient evidence presented to show that defendant possessed the requisite knowledge and intent to sustain his AWIM conviction. Defendant voluntarily got out of a vehicle and, while armed with a gun, approached the victim's vehicle. The victim unequivocally testified that defendant pointed a gun at him and told him to get out of the vehicle. The victim further testified that defendant pointed the gun at his head and pulled the trigger. Although the gun misfired, the trial court could reasonably conclude that defendant's act of pulling the trigger while pointing the gun at the victim's head established defendant's intent to assault the victim with the intent to murder him as the principal. *People v Anderson*, 322 Mich App 622, 629; 912 NW2d 607 (2018) ("A gun is a deadly weapon and firing a deadly weapon at another person—once or several times— undoubtedly involves the use of deadly force, because it is an act for which 'the natural, probable, and foreseeable consequence . . . is death.' ") (citation omitted).

In addition, the evidence supported the trial court's finding that defendant had the requisite intent to commit AWIM under a theory of aiding and abetting, and in fact did so aid and abet. "Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

The victim's testimony was clear that after defendant's attempted shot at him misfired, defendant fixed the gun and then passed it to his codefendant. Defendant's codefendant, as

defendant had, pointed the gun at the victim's face. The codefendant was thus able to achieve the end result of what defendant had first attempted to do-shoot the victim in the face.

Defendant asserted, when providing a statement to Livonia Police Officer Anthony Hall that he was actually trying to get the gun away from his codefendant, given the violence that had already occurred that evening. Defendant could and did insist that he "did nothing," and that he tried to wrestle the gun away from codefendant, but the victim conversely testified that defendant first pulled the trigger of the gun and then voluntarily handed the gun to codefendant. The trial court clearly disbelieved defendant's account of the incident, finding that defendant acted in concert with the person that shot the victim. This Court will not disturb the trier of fact's credibility determinations of a witness. *Kanaan*, 278 Mich App at 619. There was sufficient evidence presented to establish that defendant assaulted the victim with the intent to murder him, or assisted a codefendant in doing so. Defendant's claim thus fails.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective for failure to pursue a forensic examination regarding defendant's criminal responsibility and competency to stand trial, failure to pursue an insanity defense, and failure to interview defendant's cousin. We disagree.

A claim of ineffective assistance of counsel must be raised below in a motion for a new trial or an evidentiary hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Defendant first raised the issue of ineffective assistance of counsel in a motion for remand that he filed in this Court. Because defendant did not raise the issue of ineffective assistance of counsel below and failed to provide adequate support of his claim, it is unpreserved for appellate review.

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id.* Because defendant has not preserved this issue for consideration, however, this Court's review is limited to mistakes apparent on the record. *Snider*, 239 Mich App at 423.

Effective assistance of counsel is presumed and a defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

A defendant must also overcome the strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d

623 (2012). The failure to call witnesses or make an adequate investigation can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense or undermines confidence in the outcome of the trial. *Id*. at 716. However, trial counsel's decision to not pursue a meritless insanity defense does not render his assistance ineffective. *Snider*, 239 Mich App at 425.

Legal insanity, an affirmative defense to a criminal prosecution, applies if a defendant suffered from a mental illness or intellectual disability, resulting in a lack of substantial capacity "either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1). A defendant's voluntary intoxication of alcohol or controlled substance at the time of the offense does not form the basis of an insanity defense solely because he was under the influence. MCL 768.21a(2). Moreover, "[t]he defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768a(3).

Defendant contends his trial counsel failed to adequately investigate and pursue an insanity defense at trial on the basis of his marijuana-triggered psychosis diagnosis. Defendant maintains that he told trial counsel about his diagnosis and use of marijuana and alcohol at the time of the events, and trial counsel failed to conduct any kind of investigation. To support his position, defendant points to two pages from a discharge summary from St. John Macomb-Oakland Hospital from 2015. However, neither page provides any indication that defendant was diagnosed with a psychosis, only that he received an informational handout regarding psychosis. The pages also fail to establish defendant's condition or capacity at or near the time of the incident because the document provided is dated two years before the incident occurred.

In addition, defendant's statements to police after his arrest demonstrate defendant's coherence, his ability to recall the recent events, and absence of psychotic behavior. Defendant's current claim that he was in a psychotic state at the time of the incident directly contradicts his prior statement to police that he was only the scene to prevent an escalation. Because trial counsel was not required to advocate a meritless defense and defendant has failed to establish that a successful insanity defense could have been pursued, defendant was not denied the effective assistance of counsel.

Defendant next contends that trial counsel was ineffective for failing to interview his cousin to support defendant's claim of innocence. To support his claim, defendant merely asserts that his cousin would "also verify that [defendant] committed no acts of violence, but [was] caught up with a group of young men who were acting violently," with no affidavit or other written statement actually provided by his cousin. While defendant contends he could not secure his cousin's proposed testimony until his cousin was available in February 2020, since filing his appeal brief in January 2020 defendant has not updated this Court regarding his ability to secure his cousin's proposed testimony. And, it is unclear whether defendant's cousin would even be willing to testify or provide information that supported defendant's claims, especially since defendant evidently places blame on the "group of young men who were acting violently," which included defendant's cousin. It is logical that trial counsel's strategy in not having defendant's cousin testify was to avoid the potential contradiction of defendant's defense theory at trial and, instead, focus on the victim's alleged lack of credibility. Because defendant has not established what his cousin's

testimony would have been, or that it would have resulted in a different outcome, trial counsel's alleged failure to interview defendant's cousin did not result in ineffective assistance.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Anica Letica